**PHILLIPS PIPE LINE COMPANY,**
Appellant,

v.

**Emilio RAZO et al., Appellees.**

No. 237.

Court of Civil Appeals of Texas.

Tyler.

Nov. 10, 1966.

Supplemental Opinion Dec. 1, 1966.

Rehearing Denied Dec. 8, 1966.

Hall E. Timanus, George Hagle, Andrews, Kurth, Campbell & Jones, Houston, Wm. J. Zeman and Lloyd G. Minter, Bartlesville, Okl., E. H. Brown, Houston, for appellant.

Thomas J. Mitchell, Combs & Mitchell, Houston, Leland B. Kee, Davis & Kee, Angleton, for appellee, Razo.

Royce R. Till and Sam W. Cruse, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee, Bechtel Corp.

SELLERS, Justice.

This suit was brought by Emilio Razo, plaintiff, against Phillips Pipe Line Company, Bechtel Corporation and J. A. Mercer, defendants, to recover for personal injuries to himself in the sum of $304,288.00. The injuries to the appellee were alleged to be the result of an explosion of Phillips' Ethylene pipe line when struck by a KD–7 Caterpillar bulldozer which was attached to a metal sled upon which appellee was. riding. To appellee's cause of action, the defendants Phillips Pipe Line Company and J. A. Mercer filed their answer denying

generally the material allegations contained in the appellee's petition. The appellant, Phillips Pipe Line Company, also alleged that the appellee was guilty of contributory negligence in a number of respects, and that the injury to appellee was the result of an unavoidable accident.

The appellant, Phillips Pipe Line Company, further alleged that appellee's injury and accident were caused by the negligence of appellee's employer, Monical & Powell, Inc., and/or T-T Construction Company, Inc., Joint Venturers. The Phillips Pipe Line Company in its answer seeks as cross-plaintiff and third-party plaintiff to hold Bechtel Corporation and Monsanto Chemical Company jointly liable for the injury to appellee in the event the court should hold that appellee was entitled to recover of Phillips Pipe Line Company.

Trial was to a jury and a judgment was rendered for plaintiff for the full amount sued for against defendant Phillips Pipe Line Company, denying judgment against the other defendants, and denying Phillips' cross-action against Bechtel Corporation.

Phillips Pipe Line Company has duly prosecuted this appeal.

The following sketch will aid in understanding the factual situation presented in this case:

In 1956, Phillips Pipe Line Company secured an easement for the construction of a pipe line across the land of Riggs and Krause, the land at the time being undivided. This pipe line was not constructed until 1960 at which time Krause and Riggs had partitioned the land and a partition fence had been constructed on the dividing line of their property. This fence begins at State Highway No. 332 which is to the north of the land involved and runs in a southerly direction, then turns almost due west for a distance, and then makes another turn to the southwest. After this fence was constructed, Riggs had a private road leading from the highway south on the east side of the fence line. Krause had a private road leading south from the highway on the west side of the fence. The two roads parallel each other until they reach a point where the fence line turns west and there the Krause road turns west with the fence line but the Riggs road continues in a southerly direction. The Phillips pipe line and right-of-way enters Riggs' land on the east side, continues in a westerly direction until it crosses the Riggs road a short distance south of the fence line and the Krause road, then turns in a northwesterly direction until it crosses the fence line and immediately crosses the Krause road, continues west along near the north side of the Krause road until it reaches near the Brazos River on the west where the Phillips pipe line turns south under the Krause road and enters the river crossing. The pipes at the river crossing on the Phillips line are uncovered and plainly visible.

In January of 1962, Monical & Powell, Inc. was building a pipe line under a contract with Bechtel Corporation for Monsanto Chemical Company, and an easement for this pipe line was secured from Krause and ran from the east where it entered the Krause land almost due west and parallel with the Phillips pipe line, but was some five hundred feet to the north of the Phillips line. This pipe line was to cross the Brazos River on the west side of the Krause land. A part of this right-of-way of Monsanto across the Krause land was inundated with water from a pond or slough, and so in order to gain easier access to the river on the west, Monical & Powell secured permission from Krause to use his private road above described. Monical & Powell had been using this road for about a month when, on January 29, 1962, their KD–7 bulldozer, in making a return from the river area to the highway using the Krause road, became stuck, and in an effort of the driver to extricate the machine, ruptured the Phillips pipe line. An explosion followed immediately and the appellee was severely injured with first, second, and third degree burns over some 38% of his body. This explosion occurred at the point where Phillips' line crossed under the Krause road.

The jury made the following findings:

"1. A clearly defined roadway existed on the Krause property at the place where the explosion occurred, at and prior to the time of said explosion.

"2. Phillips Pipe Line Company, its servants, agents, or employees knew of the existence of said roadway on the Krause property at the place where the explosion occurred * * * at and prior to the time the explosion occurred.

"3. Prior to the time of the explosion the defendant Phillips Pipe Line Company failed to give such warning of the presence of the six inch ethylene pipe line on the Krause property as would have been given by an ordinary prudent pipe line company under the same or similar circumstances.

"4. Failure of the defendant Phillips Pipe Line Company to give such warning * * * was a proximate cause of the explosion in question.

"5. Defendant Phillips Pipe Line Company constructed a portion of the

six inch ethylene pipe line underneath the Krause road.

"6. In constructing a portion of the six inch ethylene pipe line underneath the Krause road * * * the defendant Phillips Pipe Line Company failed to bury such line to such depth as it would have been buried by an ordinary prudent pipe line company under the same or similar circumstances.

"7. Failure of the defendant Phillips Pipe Line Company to bury said pipe line to such depth as it would have been buried by an ordinary prudent pipe line company under the same or similar circumstances * * * was a proximate cause of the explosion in question.

"8. Defendant Phillips Pipe Line Company failed to make such inspection of the six inch ethylene pipe line on the Krause property as would have been made by an ordinary prudent pipe line company under the same or similar circumstances.

"9. Failure of defendant Phillips Pipe Line Company to make such inspection of the six inch ethylene pipe line, on the Krause property, as would have been made by an ordinary prudent pipe line company under the same or similar circumstances * * * was a proximate cause of the explosion in question.

"10. At the time and on the occasion in question the plaintiff, Emilio Razo, was an invitee on the premises in question."

In its brief, the appellant in Points 1 and 2 asserts that the court erred in failing to hold that appellant at no time violated or breached any duty owed to the appellee and in failing to hold that the accident and resulting damage complained of by appellee

were not legally forseeable consequences of the actions and omissions charged to Phillips Pipe Line Company. With this contention, we do not agree.

It has been held by the Supreme Court of this State that those who distribute a dangerous article or agent owe a degree of protection to the public proportionate to and commensurate with the dangers involved. McAfee et al. v. Travis Gas Corporation et al., 137 Tex. 314, 153 S.W.2d 442.

It is true as pointed out by Phillips that the Krause land is covered by heavy timber, is wet and marshy, and is not touched by a public road, but there is a plainly marked private road as found by the jury with ample evidence to support such finding. This road was sufficient notice to appellant that some other company might use this road with Krause's permission to construct another pipe line on the land, as was done, or that the owner might use heavy equipment to clear this land of the large timber from the surface of the land and would use this road. McWilliams v. Kentucky Heating Co. et al., 166 Ky. 26, 179 S.W. 24, L.R.A.1916A, 1224. Being charged with notice that this road might be used for other heavy equipment, it was the duty of the defendant pipe line company to give such warning as an ordinary prudent pipe line operator would have given under such circumstances of its pipe line under the road. It is shown that it is the custom of pipe line companies to paint the fence posts where the line passes under a fence and that a marker is always installed when a pipe line goes under a road to warn of the presence of the pipe line. While there is evidence both ways about the fence posts being painted, the jury found that they were not painted and this finding must be sustained since the posts themselves were destroyed by the fire following the explosion. There was no marking warning of the pipe line where it went under the Krause road. The jury found that Phillips' failure to give such warning was a proximate cause of the explosion in question. We are of the

opinion that the evidence was sufficient to sustain the jury's finding that Phillips, in constructing its pipe line under the Krause road, failed to bury its line to such depth as it would be buried by an ordinary prudent pipe line operator under the same or similar circumstances. There is evidence that the pipe line at the point of explosion was only fourteen inches deep and that the failure to bury to a deeper distance was a proximate cause of the explosion in question. Appellant contends that it owed appellee no duty since he was a trespasser and that there was not sufficient evidence to sustain the jury's finding that appellee was an invitee on the premises in question.

The sub-contractors, B. D. Carlton, Monical & Powell, Inc., and T-T Construction Company, were Joint Venturers charged with the duty of constructing the pipe line. The contract was with the Bechtel Corporation to build the pipe line for Monsanto Chemical Company. The appellee was an employee of the above named contractor, Monical & Powell, Inc. The land over which the Monsanto pipe line was to run over the Krause land was partly covered by a slough or pond making it extra hazardous to cross and in order to save time and money, these contractors secured the following written permission to cross the land of the fee owner, Krause:

"To Whom it May Concern:

"L, Lee S. Krause in agreement with B. D. Carlton, Sub-Contractor, do hereby authorize B. D. Carlton to perform the following work on property of Lee S. Krause:

"work to be performed:

"Do grant permission for B. D. Carlton, Monical & Powell And T. T. Construction to cross my land with tools and equipment to make a pipeline crossing for a pipeline, across the river.

"It is understood that the land will be leveled and left in as good a condition as it was found.

"B. D. Carlton agrees to cut approximately 20 trees on the roadway and push them out of the way for this right of crossing.

"The Sub-Contractor, B. D. Carlton, does guarantee to perform said work in a workman like manner, and shall be soley responsible for this operation.

"Lee S. Krause

"Signed:

Owner

"/s/ Lee S. Krause     Tenant

Lessee

"December 6, 1961"

The facts as found by the jury show that Krause had built a levee across this pond or slough over which he had a roadway and that he had extended this road on across his land to a point near the Brazos River where the Monsanto pipe line was to cross the river. Regardless of the wording of the above instrument secured from Krause, it is without dispute that the contractors, in securing the above written consent of Krause, were to use the levy and the Krause road. Under this agreement, the contractors had for some time used this road and levee to carry heavy equipment and material across the land of Krause to and near the river on the west side of the land. The contractors had completed the crossing of the Monsanto pipe line river crossing about a week before the explosion. On the date of the explosion, the contractors had sent the bulldozer, pulling a steel sled behind it, over the levy and down the Krause road to a point near the river with a heavy load of skids for distribution on the Monsanto easement, which skids were to be used in completing the construction of the Monsanto pipe line and its connection to the river crossing already completed. The bulldozer with its crew, after delivering the skids, made the return trip from the Monsanto easement the same way that it went over to the easement; that is, it returned to the river and then went up the Krause road until it reached a point near the levee where it became stuck, and the driver in an effort

to extricate the machine, struck the Phillips ethylene pipe line and ruptured the same and the explosion resulted in which appellee was injured.

■ It seems to be a well settled rule of law in this State that an easement holder, not being in exclusive possession of the land, owes the duty of ordinary care to others who may come on the property, and this duty extends even to others who would be trespassers as to the owner of the fee interest. Hernandez v. Heldenfels, 374 S.W. 2d 196 (Sup.Ct.); Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302; Prairie Pipe Line Co. v. Dalton, 243 S.W. 619 (Tex.Civ.App. writ dis'm.); Denton County Electric Co-Op. v. Burkholder, 354 S.W.2d 639 (Tex.Civ.App. writ ref. n. r. e.).

■ It is to be observed that the above quoted instrument, by its terms, did not give the contractors the use of the road, but the testimony from the fee owner, Krause, establishes that the instrument was given for that purpose and there is no evidence to the contrary. So far as the record reveals, Krause never at any time undertook to end the permission to use the road. This court is of the opinion that the instrument by its terms did not expire with the building of a river crossing on the river to which the pipe line for which it was built had never been connected thereto, and it is undisputed that the pipe line had not been completed and the contractors were within their rights in crossing the land of Krause to carry the skids and to return as they did on the Krause road. Taking this view of the instrument, giving the permission to use the road of Krause at the time of the explosion, it follows that there was ample evidence in the record to support the finding that the appellee was an invitee on the premises at the time and place of the explosion.

Other contentions made by appellant with reference to the issue of appellee not being an invitee are overruled.

■ Another contention by appellant is that the record of Phillips' easement was sufficient notice to Monical & Powell of the presence of the Phillips pipe line. The Phillips easement was not identified by a metes and bounds description. There is no way the location of the pipe line could be determined by looking at the recorded instrument. Texas-New Mexico Pipeline Co. v. Allstate Const. Co., 70 N.M. 15, 369 P.2d 401 (1962); Mountain States Telephone and Telegraph Co. v. Kelton, 79 Ariz. 126, 285 P.2d 168 (1955).

There are a number of assignments questioning the sufficiency of the evidence to support the jury's finding on most of the issues submitted to the jury and without undertaking to discuss each separately, this court is of the opinion that the evidence reflected in the six volumes of the Statement of Facts fully supports the jury's verdict, and the assignments are overruled.

We are of the opinion that there was no error by the trial court in denying Phillips' cross-action against Bechtel Corporation.

This brings us to the question of the excessiveness of the judgment. The trial court denied the request for remittitur and Phillips asserts that this was error. We quote the following from appellee's brief:

"Let us first take a look at plaintiff, Emilio Razo. He was born in Nuevo Laredo, Tamaulipas, Mexico. He moved to Kingsville, Texas in 1938 and has resided in Texas ever since * * *. He worked as a butcher for a while and then as a route candy salesman. He was in the military service of the United States during World War II and did combat duty in Saipan and Guam * * *. At the time of his injury he was 35 years of age, married and the father of three children. * * *. The accident took place on January 29, 1962. The trial was had three years later in March and April of 1965."

■ We realize this man suffered a horrible injury—first, second, and third de-

gree burns over 38% of his body. His life was saved by a fellow-employee throwing him into a mud hole at the scene of the accident and extinguishing the fire from his clothing; that after this, for months, he suffered skin grafts and pain; and that he is totally and permanently injured is without dispute in the evidence. The trial of the case was some three years after the accident. He testified at the trial. So far as this record shows, he still has use of his legs and arms, although somewhat impaired. He has his eyesight, although it is likewise impaired. In all, he is far better off than some of those in reported cases who received much less in damages. Just what prompted the jury to grant the plaintiff the full amount sued for, being the sum of $304,288.00, we do not know, and this notwithstanding the plaintiff's attorney in summing up the case to the jury asked for a much less sum. It would serve no useful purpose to cite cases reported in the books as they sustain judgments for more and less than the judgment here recovered.

It is this court's view that a reasonable judgment under the facts of this case would be $200,000.00, and we therefore will affirm the judgment for this amount, should the plaintiff grant a remittitur of $104,288 within fifteen days from this date; otherwise, the judgment of the trial court will be reversed and the cause remanded.

### SUPPLEMENTAL OPINION

In our opinion delivered and filed on November 10, 1966, this Court suggested that if appellee would file a remittitur in the sum of ONE HUNDRED FOUR THOUSAND TWO HUNDRED EIGHTY-EIGHT DOLLARS ($104,288.00) within fifteen days, the judgment of the trial court in favor of appellee would be reformed and, as reformed, affirmed. Appellee filed in writing the suggested remittitur on November 16, 1966.

Accordingly, the judgment of the trial court is reformed in conformity with such remittitur and, as so reformed, is affirmed.