PHILLIPS PIPE LINE COMPANY,
Petitioner,

v.

Emilio RAZO et al., Respondents.

No. B–48.

Supreme Court of Texas.

Oct. 4, 1967.

Rehearing Denied Nov. 29, 1967.

Andrews, Kurth, Campbell & Jones, Hall E. Timanus and George H. Hagle, Houston,

William J. Zeman and Lloyd G. Minter, Bartlesville, Okl., E. H. Brown, Houston, for petitioner.

Combs & Mitchell, Glynn W. McDonald, Fulbright, Crooker, Freeman, Bates & Jaworski, Royce R. Till, Houston, Davis & Kee, Angleton, for respondents.

GREENHILL, Justice.

Plaintiff, Emilio Razo, was injured when a bulldozer operated by his employer or employers, Monical & Powell, Inc. and T-T Construction Co., joint venturers, hit and ruptured a buried ethylene pipeline operated by defendant Phillips Pipe Line Company, causing an explosion and fire. The trial court entered judgment for Razo for $304,288 based on jury findings that Phillips was negligent in failing to bury its pipeline to a proper depth, in failing to inspect properly, and in failing to give proper warning of the presence of the pipeline. The trial court also granted an instructed verdict against Phillips on its cross-action for contribution and indemnity against Bechtel Corporation, the primary contractor for the Monsanto pipeline on which Razo was working. The Court of Civil Appeals at Tyler ordered a remittitur of $104,288 and affirmed. 409 S.W.2d 565.

Phillips Pipe Line Company operated its six-inch pipeline on an easement purchased from Lee S. Krause. The six-inch pipe was built in 1960 and paralleled a four-inch pipeline which had been laid by Phillips on the same easement in 1956. The pipes ran east and west through a cleared right-of-way across Krause's land down to the Brazos River. The Krause land was heavily wooded and marshy river-bottom land in a remote rural area which was used only for grazing a few head of cattle. In 1961 Krause granted a right-of-way across a different part of the same tract of land to Monsanto Chemical Co., and Monsanto contracted for the construction of a pipeline. The Monsanto pipeline construction was

along a cleared right-of-way parallel to and some 500 feet north of the Phillips pipelines.

Monsanto contracted with Bechtel Corporation for the construction of its pipeline. Bechtel then contracted with Monical & Powell and T-T Construction Co.; and the subcontractors contracted with one B. D. Carlton for the clearing of the Monsanto right-of-way. The landowner, Krause, gave Carlton permission to move tools and equipment across the Krause land for the construction of the Monsanto pipeline. Pursuant to Krause's permission, Monical & Powell made several trips with a dragline and bulldozer along a small, private, ranch road which extended down the Phillips' right-of-way clearing. The explosion occurred when the bulldozer, making a return trip up this road from the west, became stuck in the mud and struck the high-pressure pipeline during the efforts to free the bulldozer.

The questions before this Court concern the duty of an owner of a pipeline easement toward those moving or riding upon heavy equipment over its buried pipeline. None of the contractors notified Phillips that they were using its right-of-way as an access route to move heavy construction equipment to the Monsanto easement, and Phillips had no actual knowledge that its right-of-way was being used for that purpose. The Court of Civil Appeals held that since Phillips had notice of the existence of the private road on its right-of-way, it was charged with foreseeing that the right-of-way might be used for the movement of heavy equipment, and therefore must have used ordinary care to protect the users of such equipment from contact with its pipeline. We do not agree.

■ Phillips was lawfully maintaining its pipeline in the easement granted it by the landowner. The operator of a pipeline has the duty of ordinary care in the construction and maintenance of its lines, but this duty does not extend to hold the pipeline operator liable for every conceivable contact with its pipeline. In Pioneer Natural Gas Co. v. K & M Paving Co., 374 S.W.2d 214 (Tex.Sup.1963), this Court held that pipeline operators had the "duty to properly install their lines and to avoid dangers from occurrences such as leaks and breaks in the pipe which could result from others making *ordinary* use of the surface." [Emphasis added.]

■ The initial question which must be reached is whether the explosion in the instant case was caused by an ordinary use of the surface. The jury found that the movement of the dragline and bulldozer down Phillips' right-of-way was not an extraordinary use of the surface. There is no evidence to support such a finding. The movement of a 50,000-pound dragline and a 40,000-pound bulldozer over a small, private and rarely used road or trail in heavily wooded and muddy terrain is an extraordinary use as a matter of law. The evidence indicates that the road was passable by a pickup truck only in dry weather, and it was used only infrequently by the landowner for that reason. The accident occurred in January of 1962. The road was impassable during all of 1960, and used only a few times in 1961, the year preceding the explosion. The use of a dragline and bulldozer in the wet soil was as damaging to the surface as that of the scraper involved in the *Pioneer Natural Gas* case. The evidence indicates that the equipment left ruts from 12 to 48 inches deep over Phillips' pipeline.

■ Respondent points out that the use of bulldozers for clearing timber is not uncommon in heavily wooded areas. However, this frequency of use does not make the use of heavy-tracked equipment ordinary in the sense that it should be anticipated by a pipeline operator under the circumstances here present. The duty of using ordinary care to protect those making a reasonable and ordinary use of the surface does not extend to require the protection of those moving heavy construction equipment across a pipeline, because the pipeline operator is not

charged with foreseeing such an extraordinary use of the surface.

■ The cases indicate that one making an extraordinary and damaging use of the surface has the initial burden of avoiding contact with pipelines and other buried equipment. In the *Pioneer Natural Gas* case, supra, this Court said:

"Under these circumstances, the question is whether it is the duty of the pipeline company to continuously police its lines to keep others from interfering with them or being injured by them; or whether it is the duty of persons who do make an unusual or extraordinary use of the surface to find out where the lines are, and then either (1) avoid them or (2) request their relocation or that they be deactivated during operations, or to make reasonable inquiry so that it then becomes the duty of the pipeline company to make a disclosure of the location of its lines so that the other party may avoid striking the line."

The Court decided this question, at page 219, holding:

"We think it sound * * * to hold that at least where the activity is in an urban street or road, and where an unusual or extraordinary use of the surface is necessary to unearth the pipeline, and where there is no contract, statute, ordinance, or regulation governing the matter, the initial burden is upon the one who excavates or digs up the surface to avoid striking the line or to make reasonable inquiry as to the location of any lines that might be encountered. The duty arises, then, when it is requested to alter its lines or their use, when it is asked for information, or when it is otherwise put on such notice that it is required to take particular action to protect the lives or property of others."

In Young v. Herrington, 312 S.W.2d 685 (Tex.Civ.App.—Austin 1958, no writ), plaintiff sued for injuries sustained when his bulldozer hit a pipeline covered only by a few inches of dirt. The court there said:

"There is no showing that the right of way easement required appellant's pipe to be buried or located at any particular place or its location marked. In this state of the record there is no showing that any duty rested on appellant to mark the location of his lines or to bury them to any particular depth. However appellant was notified that the land was to be cleared and of the then existing hazard of the pipelines to both machinery and the operator. Thereafter it became the duty of appellant to either bury the lines or mark their location in order to prevent contact with them." 312 S.W.2d at 687.

■ The *Pioneer Natural Gas* holding dealt with an activity in an urban street or road. However, it is not unreasonable to expect one making an unusual use of the surface in a rural area to make a reasonable effort to determine the location of existing pipelines in order to avoid contact with them. In the instant case, it seems clear that the subcontractor, Monical & Powell, had sufficient notice of Phillips' pipeline in the vicinity to require it to inquire as to the pipeline's location or request that it be marked. The alignment sheets and maps furnished Monical & Powell showed that the Phillips' pipeline crossed the Monsanto right-of-way at two points less than two miles distant on either side of the explosion site. Monical & Powell's construction supervisor had seen Phillips' aerial marker and pipe risers adjacent to the Krause land. The existence of a fifty-foot clearing through an otherwise heavily wooded area should suggest the possibility of a pipeline, particularly to one engaged in constructing another pipeline on a similar clearing only 500 feet to the north. Under these circumstances, at least in the absence of a request of its owner or operator to move or deactivate the line, it is not unreasonable to place the burden of avoiding contact with the pipeline on the one making use of heavy-

tracked equipment with knowledge of a pipeline in the vicinity.

■ Phillips had no knowledge, either actual or constructive, sufficient to charge it with the duty of warning the contractor of the presence of its pipeline. ·The existence of the small, private, ranch road down its right-of-way in a remote area is insufficient, as a matter of law, to charge it with foreseeing that the road would be used for the movement of such heavy equipment. It is undisputed that Phillips was not advised that heavy equipment would be moved along its right-of-way. Phillips' knowledge of the construction on the Monsanto right-of-way north of its pipeline is likewise insufficient to charge it with knowledge that its right-of-way would be used as an access route for the movement of heavy equipment to the Monsanto right-of-way. Phillips was aware of the construction on the Monsanto pipeline, just as the subcontractors were aware of the existence of a Phillips pipeline in the general vicinity of their construction. However, Phillips had no knowledge that Monical & Powell would move its construction equipment to the south of the Monsanto right-of-way, rather than using that easement for the movement of equipment.

■ Furthermore, Phillips' easement was the dominant estate on the Krause land. The landowner had no right to make a use of the surface that might endanger or interfere with Phillips' pipeline; and hence the landowner could not grant the right of using the surface in such a manner to anyone else. The landowner's right to make reasonable use of the surface above Phillips' pipe did not give Phillips notice that Monical & Powell would make an extraordinary use of the surface. Therefore, Phillips had no constructive notice of the unusual and damaging use of the surface which caused the explosion. The pipeline operator's duty to prevent contact between its pipeline and heavy construction equipment does not arise until it is informed or has knowledge that an extraordinary or damaging use will be made of the surface near its pipeline. Pio-

neer Natural Gas Co. v. K & M Paving Co., 374 S.W.2d 214 (Tex.Sup.1963). There being no duty, Phillips cannot be liable for failing to mark or give warning of its pipeline.

■ There is no evidence to support the jury's finding that Phillips was negligent in failing to bury its pipe deeper. There is no evidence as to the depth at which the line was originally laid. The evidence is disputed; but it seems clear that at the time of the explosion, the pipe was buried from 10 to 30 inches deep near the explosion site, even after heavy equipment had traveled across the easement. The right-of-way grant from Krause to Phillips did not specify any particular depth at which the line was to be buried, and there is no statute fixing a minimum depth for pipelines in rural areas. There are a number of cases in which by contract the pipeline company has been required to bury the line under agricultural land "below plow depth," the depth at which it might be hit by an ordinary plow. No such provision exists here. As stated, in the instant case, the surface was heavily wooded land used for grazing, not agriculture. The existence of a private road on the pipeline right-of-way might have created a duty to bury the pipe at a depth sufficient to support the anticipated use of the road by a pickup truck or light vehicle; but, as stated, Phillips cannot be charged with foreseeing that the easement would be used for the transporting of heavy construction equipment. Therefore, Phillips had no duty to bury its pipe deep enough to support the movement of heavy construction equipment, and cannot be held to be negligent in failing to do so under the circumstances.

■ There is no evidence to support the jury's finding that Phillips was negligent in failing to inspect properly its buried pipeline, and that such negligence was a proximate cause of the explosion. There was no evidence of any leak in the pipeline or any exposure to the surface. The evidence indicates that Phillips scheduled regular weekly aerial inspections over this particular pipe-

line, and there is no testimony that it failed to make this regular inspection at any time prior to the explosion. There is no evidence as to whether or when any ruts or tracks had been made along the pipeline prior to the explosion which should have been visible from the air. In the absence of such proof, an aerial inspection would provide no warning of the use of the pipeline right-of-way as a road for heavy equipment unless such inspection took place at a time when the equipment was actually moving on Phillips' right-of-way. Since it is undisputed that the equipment was moved down the right-of-way infrequently in the space of over two weeks, it would have been a coincidence for the pilot to have flown his inspection at the same time the equipment was moving on the right-of-way. The failure of such a coincidence to take place cannot, as a matter of law, be a proximate cause of the explosion.

There is no contention made that the practice of aerial inspections of pipelines is, in itself, negligence, since there is evidence that such inspections are now the accepted standard in the industry. There being no evidence that Phillips failed to make its regular inspection prior to the explosion, there is no evidence that Phillips was negligent in failing to properly inspect its pipeline, or that such failure was a proximate cause of the explosion.

We conclude, therefore, that under the circumstances Phillips Pipe Line Company had no duty to warn Monical & Powell or its employee, Razo, of the presence of its pipeline, or to mark the pipeline. There is no evidence that Phillips was negligent in failing to properly inspect its pipeline or to bury the pipe deeper. Therefore, Phillips was not guilty of primary negligence proximately causing Razo's injury, and Phillips is not liable to respondent Razo.

The judgments of the courts below are reversed, and judgment is here rendered that respondent take nothing. In view of this disposition of the case, there is no need to decide whether the trial court erred in granting Bechtel Corporation an instructed verdict on Phillips' cross-action for contribution and indemnity.

## DISSENTING OPINION

### On Motion for Rehearing

SMITH, Justice.

Further consideration of the record in this case leads me to conclude that I was in error in agreeing to the result reached by the Court on October 4, 1967. An exhaustive review of the evidence is unnecessary. It is sufficient to say that the evidence supports the finding of the jury that a clearly defined roadway existed on the Krause property at the point in the roadway where the accident occurred; that the petitioner knew of the existence of such roadway; that the petitioner prior to the time of the explosion failed to give such warning of the presence of the six inch pipe line on the Krause property as would have been given by an ordinary prudent pipe line company under the same or similar circumstances; and, that the failure to warn was a proximate cause of the explosion.

There are other favorable jury findings to support the judgment entered for respondents, but the above will suffice to illustrate my point. Under the evidence in this case the petitioner was under a duty to warn the public, whether some were riding in automobiles, jeeps or in a bulldozer. The petitioner should have anticipated the use of such vehicles. In fact, the petitioner lost its case before the jury largely because it "administratively, unilaterally and mistakenly" decided there was no road at the point of the explosion. Both Phillips' superintendent and pipe line construction superintendent testified on this question to the same effect. The superintendent testified:

"Q  If there had been a place there that was a road, and being used as a road by folks, then you would have considered it desirable to make

some kind of a marker there, would you not?

"A   As a rule.  We have other instances like that where we can't keep people from building a road over our right-of-way, but we put up a big sign warning people, 'This road is traveling over a high-pressure pipeline.'

"Q   You had no such sign on this right-of-way on the Krause land?

"A   No, sir.  There was no road there and we didn't consider it a road."

The evidence is clear that petitioner followed the custom of erecting warning signs such as "[t]his road is traveling over a high-pressure pipeline" at points where a road existed. The Krause road and a neighboring road are clearly shown upon an aerial map in evidence.  There was a marker where the petitioner's line crossed the neighboring private ranch road; there was no marker to indicate the presence of the pipeline under the Krause road.  This Court should not excuse the petitioner merely because it mistakenly believed no road existed on the Krause property.  As argued by the respondents in their motion for rehearing:

"  *  *  *  roads, public and private, bespeak human activity—travel, if you please, travel by all kinds of vehicles—bulldozers, pickup trucks, maintainers and all of the other machinery and vehicles which go to the building, maintenance and use of roads.  Many uses must be anticipated for roads.  For instance, just as this road was graded and built by a maintainer, a maintainer will most certainly be employed sooner or later in the maintenance of same.  A maintainer so used, unless adequate warning is given, will most certainly rupture one of Phillips' shallow pipe lines."

Whether or not petitioner was under a duty to warn does not depend upon whether the use of the road was an ordinary use or an extraordinary use.  The degree of care

to be exercised must be commensurate with the danger.  I cannot accept the statement in the Court's opinion that "[t]he duty of using ordinary care to protect those making a reasonable and ordinary use of the surface does not extend to require the protection of those moving heavy equipment across a pipe line, because the pipe line operator is not charged with foreseeing such an extraordinary use of the surface."  The concept that the size of the equipment used on a road determines whether or not the pipe line company owes a duty to warn has no merit.  The petitioner was under a duty to mark road pipe line crossings.  See Thompson v. Ohio Fuel Gas Co., 9 Ohio St.2d 116, 224 N.E.2d 131 (1967).  Green, Proximate Cause in Texas, 28 Texas L.Rev. 776–77.

The Court relies upon the case of Pioneer Natural Gas Co. v. K & M Paving Co., 374 S.W.2d 214 (Tex.Sup.Ct., 1963) in support of its decision.  I agree with respondents that there is no analogy between that case and this.  I agree with respondents' argument that,

"Pioneer Gas involved an altogether different situation, with vastly differing duties and obligations.  In that case it was held that K & M Company was charged as a matter of law with the duty to inquire before excavating in a city street by reason of the fact that it is a matter of common knowledge that all kinds of gas lines, electric lines, sewer lines, etc., are to be found under city streets.  There is no analogy between K & M dealing with city streets and urban conditions and the present situation dealing with a private ranch road and rural condition.  Further no analogy exists between excavation and travel upon a road, a distinction made in *Thompson* (supra).  All of the other cases referred to in the Court's opinion in Pioneer are cases involving gas or electric transmission lines under city streets.  Not a single case relates to a rural situation.  All of these cases are based upon the fact that any [one] knows

excavating in a city street is potentially dangerous."

The basic issue before the Court is whether or not there was any evidence from which the jury could conclude that the petitioner should have anticipated the need for a warning marker near the explosion site. As heretofore stated, the jury has found that the petitioner knew there was a clearly defined road where the accident occurred, and that the failure to warn of the existence of the pipe line was a proximate cause of the resulting injuries sustained by respondents.

The judgment of the trial court and the Court of Civil Appeals should be affirmed.