In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00368-CV
_____

CHRISTOPHER MANN AND GWENDA MANN, Appellants

V.

RUDIS ROBLES AND CLAUDIA ROBLES, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 16-09-11337-CV

**MEMORANDUM OPINION**

Under Texas law, "[a]n easement does not divest a property owner of title, but allows another to use the property for that purpose."[1] Thus, easements are the means the owner of the fee uses to grant a right—for the purpose stated in the grant—to use the owner's land.[2] Once an easement is created, the owner of the property burdened

---

[1]*Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012).
[2]*Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2007); *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002).

1

by the easement must allow the party holding the easement the right to use the land the easement describes "for the purpose of the easement."[3]

The easement involved in the dispute burdens a tract we will refer to in the opinion as Tract 1. The easement on Tract 1 is sixty feet wide and enters Tract 1 from a gate in a fence separating Tract 1 and the tract that lies to its north. Then, the easement travels from the gate in the fence of Tract 1's northern border to a cattle guard located just outside the fence line at the southern border of Tract 1. A county road lies several feet and parallel along Tract 1's southern border.

When the easement was created, the party who created it owned all the tracts of property that are mentioned in this opinion. But since the owner wanted to retain the tract north of Tract 1 and sell Tract 1, she wanted to retain her right to cross Tract 1 so she could access the county road, which is just past Tract 1's southern border. Without an easement that allowed her to cross Tract 1, the owner of the Tract lying north of Tract 1, following her decision to sell Tract 1, would not have had access from her remaining tract to the county road that runs beside Tract 1's south border.

The parties involved in this suit acquired the tracts involved many years after the owner of the tracts involved here created the easement that is in the deed to Tract 1. The case resulting in this appeal was filed in 2016. That year, the owners of Tract

---

[3]*Severance*, 370 S.W.3d at 721.

1—Rudis and Claudia Robles—sued the easement holders—Christopher and Gwenda Mann—alleging the Manns engaged "in unauthorized uses" of their right-of-way easement in four ways. According to the petition, the Manns exceeded their rights under their easement on Tract 1 by (1) building fences and other structures in the easement, structure that allegedly prevented the Robleses from using the gate they also used to access their home, which is located on Tract 1; (2) placing footings, and with lamp poles and cameras in the easement, which they alleged allowed the Manns to monitor the activities that occurred in the easement; (3) erecting a gate at the entrance of the easement, which the Manns locked; and (4) damaging the property owned by the Robleses in the easement, property that consisted of a cattle guard and fencing at the entrance to Tract 1.[4]

---

[4]A survey drawing, admitted into evidence in the trial, shows the Robleses own two tracts, each containing 20.826 acres. The westernmost tract of the Robleses' property is referred to in this opinion as Tract 1. The survey depicts a sixty-foot-wide easement inside the boundaries of Tract 1, an easement labeled in the survey drawing as "TRACT I." The survey labels the Robleses' other tract, which lies to the east of Tract 1, as "TRACT II." The survey does not include boundary lines of the Manns' tract, but it does show the Manns' tract joins Tracts 1 and 2 at the northern borders of Tracts 1 and 2. Even so, the survey indicates the Manns' tract, which lies north of the Robleses' tracts, is a 25.774-acre tract. The sixty-foot easement crossing Tract 1 is depicted to run from the cattle guard that is in the fence line of Tract 1's southern border to a gate that lies at the northern border of Tract 1 at a gate that is in the fence line that separates Tract 1 and the 25.774-acre tract owned by the Manns.

The trial involved many claims and counterclaims. In the end, the trial court submitted the claims to the jury in a charge that contains thirty-two questions (not counting the subparts for some questions). The Robleses' claims were submitted in twelve questions. The Manns' counterclaims were submitted in twenty questions in the charge. Ultimately, the jury found for the Robleses on two liability and damages questions, finding in their favor on claims of intentional infliction of emotional distress and trespass.[5] The jury failed to find for the Manns on any of the questions tied to the counterclaims submitted in the charge. The jury awarded the Robleses damages that total $100,000 on their claims for intentional infliction of emotional distress ($40,000 for mental anguish) and for trespass ($60,000, based on a $50,000 cost-of-repair and restore finding and $10,000 for the temporary lost use of Tract 1).

At the Manns' request, which they presented in a post-judgment motion, the trial court threatened to grant a mistrial unless the Robleses agreed to a remittitur of

---

[5]Based on the record, the Robleses' claims should have been submitted simply on a theory of nuisance, rather than trespass, given the facts and the evidence that shows the Manns hold an easement that burdens Tract 1. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 603 (Tex. 2016). But the Manns did not object on this basis in the trial, and they do not argue here the trespass findings are immaterial and irrelevant to the trial court's judgment. In the absence of objections to the charge to the trespass theory of recovery, we measure the sufficiency of the evidence supporting the trespass claims against the charge the trial court submitted in considering the arguments presented here. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (noting "it is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge").

$12,600. The Robleses accepted the suggested remittitur. Shortly after they did so, the trial court signed a final judgment awarding the Robleses damages that total $87,400 (not including prejudgment interest and costs).[6]

The Manns appealed. They raise three issues in their brief for our review. In the first two of the Manns' issues, they argue there is no evidence and alternatively insufficient evidence to support the jury's damages and liability findings on the questions that are tied to the Robleses' claims for intentional infliction of emotional distress. In issue three, the Manns argue the evidence is legally and factually insufficient to support the jury's damage awards for cost-or-repairs and for temporary, and past loss of use, the damages questions tied to the jury's finding on trespass.

After careful review of the record before us in the appeal, we affirm in part and reverse in part for reasons more fully explained below.

---

[6]The $12,600 remittitur is tied to the $50,000 awarded for cost of repairs. The record shows the trial court rejected the arguments the Manns presented in post-judgment motions that attacked the $10,000 the jury awarded for loss of use. So, the final judgment includes the $10,000 temporary past loss of use award based on the evidence presented by the Robleses that they were blocked from using the entrance to Tract 1 for about two months. The Robleses also did not file a cross-appeal, and have not challenged the trial court's $12,600 remittitur, even though it resulted in a judgment that is less than the amounts the jury awarded on the damages issues in the charge.

Background

The Robles and the Manns own adjoining tracts of property in Montgomery County. The Robleses bought their two tracts, which are shown in the survey drawing in evidence, in 2005. They own Tract 1 and an adjoining tract, which lies to the east of Tract 1. The Manns bought their tract, which lies north of Tract 1, in 1995. The only access the Manns have to the tract they own is from a county road, which runs alongside the southern border of Tract 1. The deed to Tract 1 is burdened by a right-of-way easement, the easement the Manns acquired from a predecessor in title to the tract they own. The right-of-way easement authorizes the Manns, as the owners of the northern tract, a right of ingress and egress to cross Tract 1, exiting Tract 1 at a gate that lies in a fence line on the southern border of Tract 1 at the cattle guard there. The easement existed when the Manns and the Robleses acquired their respective tracts.

This lawsuit is the third of a series of lawsuits between these parties. All the lawsuits concern disagreements between the parties over their property rights. The first case was filed by Rudis Robles against the Manns in August 2010. In that suit, Rudis alleged the Manns were liable to him under a theory of promissory estoppel when they breached an oral agreement to sell part of their land to him, around 12 acres that lies north of the border to Tract 1. The property at issue in that dispute

included a house on the twelve-acre tract.[7] Rudis obtained a six-figure judgment against the Manns in the first case, a judgment later affirmed after the Manns appealed.[8]

Shortly after the judgment in that case became final, the Manns filed the second case of the three cases referred to above. In the second case, the Manns sued the Robleses for injunctive relief and damages, alleging the Robleses had interfered with their rights to use their sixty-foot easement that crosses Tract 1.[9] In a trial to the bench, the trial court found the Manns were entitled to declaratory relief. The trial court in that case then signed a judgment, which enjoins the Robleses from interfering with the Manns' use of the sixty-foot easement. The trial court in the second case also awarded the Manns $4,070 for attorney's fees.[10] Even so, the trial court in that case denied the Manns any recovery on the other (many) theories they had pled.[11]

---

[7]*Mann v. Robles*, No. 13-14-00190-CV, 2016 WL 1274690 (Tex. App.—Corpus Christi Mar. 31, 2016, pet. denied) (mem. op.). The Texas Supreme Court transferred the appeal to the Corpus Christi Court of Appeals in a docket equalization order. *Id.* at *1, n.1.

[8]*Id* at *1 and *8.

[9]*Robles v. Mann*, No. 13-14-00211-CV, 2016 WL 1613316 (Tex. App.—Corpus Christi Apr. 21, 2016, no pet.) (mem. op.). The Texas Supreme Court transferred this appeal to the Corpus Christi Court of Appeals in a docket equalization order. *Id.* at *1, n.1.

[10]*Id.* at *1.

[11]*Id.* at *1, n.2 (listing the various claims and noting the Manns "seem to be limiting their argument [in their appeal] to their interference claim").

The Robleses appealed from the trial court's judgment in the second case. On appeal, the Corpus Christi Court of Appeals explained that "[a]n easement is a nonpossessory interest in land." The Corpus Christi Court also observed that while the trial court had called the Manns the "owners" of the easement in its final judgment, a judgment the Robleses appealed, it then explained the "judgment did not grant Mann the right to use the easement for any purpose greater than the express grant."[12] When explaining the Manns' rights in the easement, our sister court stated: "Rather than expanding Mann's rights, the trial court's order provides for what the express grant allowed."[13]

Shortly after the Corpus Christi Court issued that opinion, the Manns made alterations to the easement, damaged property the Robleses had in the easement, and excluded the Robleses from the surface easement that crosses Tract 1. These actions led to the third lawsuit and the judgment at issue in this appeal. At this point, there is no dispute between the parties about whether the Manns removed the cattle guard that was at the entrance to Tract 1. The Manns also never disputed the claims alleging they erected a gate at the entrance, locked it, and ran a fence the length of the easement, actions that prevented the Robleses from accessing the property within the easement to Tract 1. During trial, the Manns also installed footings and then

---

[12]*Id.* at *4.
[13]*Id.*

placed light poles, with lights and several cameras, in the easement. At trial, Christopher Mann testified he wanted to light the easement so he could "see the trucks at the end of the road and also see who was putting nails in the road." He also testified he placed a gate at the entrance after removing the cattle guard that was there to prevent the Robleses' cattle from entering the county road to the south of Tract 1.

Christopher testified that as of the date of the trial, he now knows his right-of-way easement allows him to go "in and out" of the entrance to the Robleses' tract to access his property from the county road. But that did not concede anything more than Texas law requires since owners of property, burdened by an easement, retain their rights as owners of the fee to enjoy the reasonable use of the surface area covered by the easement as long as the use the owner makes of his land does not endanger or interfere with the rights held by the party that possesses the easement.[14] Stated another way, parties holding easements cannot exceed whatever rights they have under the conveyance used to create the right of use the easement describes.[15] Even so, Christopher told the jury he thought he had the right to alter the fixtures in the easement on Tract 1 by placing a gate at the entrance, fencing the easement, and

---

[14]*See Phillips Pipe Line Co. v. Razo*, 420 S.W.2d 691, 695 (Tex. 1967).
[15]*See United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S.Ct. 1837, 1844 (2020); *Krohn*, 90 S.W.3d at 700.

9

erecting lights across the easement. He testified he thought he could do so because in the judgment, he obtained in the case he filed against the Robleses, declares the Manns "are the owners of and have a 60' wide easement" in Tract 1.

About two months after the Robleses sued the Manns in what is now the third of the three cases described above, the trial court signed a temporary injunction order. The order required the Manns to remove the gate, take down the fencing they erected in the easement, and restore the Robleses' property (including the cattle guard and pipe fence at the entrance) to the condition it was in before the Manns made the changes we have described. At trial, the Robleses acknowledged the Manns had removed the gate and fence they erected where it crosses Tract 1 and goes to the fence between the tract owned by the Manns and Tract 1. And the Robleses acknowledged the Manns tried to repair the cattle guard at the entrance to Tract 1 by replacing the cattle guard that was there with another guard. The Robleses, however, contested whether the new cattle guard and repairs to the fence and easement were adequate to repair and restore the fixtures that were the easement before the Manns changed it up to its former condition. The Manns presented testimony that contradicts the testimony suggesting the repairs they made were inadequate to restore the cattleguard and entrance to their former condition. Even so, the Manns did not contest they never removed the footings they placed in the easement even

though they removed the light poles, lights, and cameras they placed in the easement after the trial court ordered those items removed.

The Robleses called three witnesses to support their claim the property burdened by the easement is still in need of repairs to restore it to its former condition based on the damages done to it by the Manns. The witnesses the Robleses called on their cost-of-repair claims were (1) Carlos Solorzano, the owner of a construction company, (2) Paul Daniels, a part-time firefighter and welder, and (3) Mauro Lopez, a licensed contractor, who is in the business of "painting and remodeling." Solorzano testified he inspected the gate and the cattleguard at the entrance and gave the Robleses a bid of $37,400 to repair the entrance. He also said his bid was reasonable to restore the entrance and cattleguard to proper order. He explained why the repairs he proposed to perform required new pipe. He also explained why the existing pipe, which he claimed is in disrepair, could not be reused.

Daniels described the repairs the Manns attempted at the entrance and cattleguard as a "botched job[.]" He also said the existing materials at the entrance were unusable, and he agreed the repairs he proposed to complete contemplated using "all new material." Daniels inspected the job in March 2017. After inspecting the entrance, he sent Robleses' attorney a bid on the job to complete the repairs for $13,840.

11

Lopez never bid on the work involved in the damage issue that concerns the work at the entrance to Tract 1. Instead, his bid, which is for $8,250, is for the labor and materials required to remove the nearly five-foot-deep, concrete footings that the Manns installed to hold the poles for their lights. The bid that Lopez gave the Robleses includes digging up and removing a 500-foot-long piece of buried conduit, conduit the Manns used to provide electrical services to the lights they placed in the easement.

Standard of Review

In all three of the Manns' issues, they argue the evidence is legally and factually insufficient to support the jury's verdict. On appeal, we review issues challenging the legal and factual sufficiency of the evidence under well-established standards. In reviewing the evidence, "we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."[16]

Under a legal sufficiency challenge, we will sustain the challenge "when, among other things, the evidence offered to establish a vital fact does not exceed a

---

[16]*Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)); *see Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 114 (Tex. App.—Beaumont 2005, pet. denied).

scintilla."[17] "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists."[18]

When conducting a factual sufficiency review, we examine the entire record and after considering the evidence before the jury, we determine whether the finding challenged in the appeal is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust.[19] Evidence is factually sufficient when "reasonable and fair-minded people reach the verdict under review."[20] In conducting our review, we defer to the decisions that a jury makes about how to weigh the evidence in the trial.[21] When jurors are asked to resolve disputes over facts arising from testimony that conflicts about those facts, the jurors have the right to decide whether to believe one witness's testimony over that of others.[22] Jurors may also decide an issue by deciding that one witness was more credible than the others.[23]

Even so, a jury's decision about a matter of "credibility must be reasonable."[24] For example, jurors are "not free to believe testimony that is conclusively negated

[17]*Suberu*, 216 S.W.3d at 793.
[18]*Id*. (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).
[19]*Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).
[20]*City of Keller*, 168 S.W.3d at 827.
[21]*Id*.
[22]*See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).
[23]*Id*.
[24]*City of Keller*, 168 S.W.3d at 820.

by undisputed facts."[25] Even when evidence is undisputed, "it is the province of the jury to draw from it whatever inferences they wish, so long as more than one is possible and the jury must not simply guess."[26]

Intentional Infliction of Emotional Distress

In their first two issues, the Manns argue the evidence is legally and factually insufficient to support the jury's liability and damages findings on the questions addressing the Robleses' claims for intentional infliction of emotional distress.

In part, the Manns argue the jury's findings on the Robleses intentional infliction of emotional distress claims are immaterial because one or more other tort theories was available (and submitted) to the jury in the trial on theories offering remedies for the conduct that was at issue in the trial.[27]

We will address the Manns' argument claiming the jury's findings on the Robleses' intentional infliction of emotional distress theory are immaterial before addressing the other arguments they raise in their appeal. Under Texas law, the tort of intentional infliction of emotional distress is a 'gap-filler' tort, meaning it is no

---

[25]*Id.*

[26]*Id.* at 821.

[27]The Manns preserved this issue for our review by raising it in their post-verdict motion for judgment notwithstanding the verdict. *See BP. Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 402 (Tex. 2017) (noting the appellant preserved its complaint about the immateriality of a finding by raising it in a post-verdict motion for judgment notwithstanding the verdict). *See* Tex. R. App. P. 33.1(a)(1) (Preservation; How Shown); Tex. R. Civ. P. 301 (Judgments).

more than a judicially created tort, available for a limited purpose, which is to allow a victim suffering from severe emotional distress, distress the defendant intentionally caused, a remedy under circumstances where no other remedy is available.[28]

On this record, reasonable minds simply cannot differ about whether other remedies are available for the conduct the Robleses' pleadings describe. The conduct had other available remedies here through two other theories, trespass and a related tort that exists when someone intentionally interferes with another's property.[29] The Manns alerted the trial court to the fact that the Robleses had other remedies available to address the Manns' conduct when the case was tried. Nonetheless, the trial court chose (over objection) to submit the case on three purportedly separate theories: trespass, intentional interference with property rights, and intentional infliction of emotional distress.

We have no doubt that Texas law does not provide a remedy through a claim for intentional infliction of emotional distress under the pleadings and evidence the parties presented here. More than fifteen years ago, the Texas Supreme Court explained: "Where the gravamen of a plaintiff's complaint is really another tort,

---

[28]H*offmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1988)).
[29]*See Zeltwanger*, 144 S.W.3d at 447.

15

intentional infliction of emotional distress should not be available."[30] The Manns objected to submitting questions on the theory of intentional infliction claim and complained about it should not have been submitted in a post-judgment motion as well. We conclude the trial court should have, as requested by the Manns, disregarded the finding favoring the Robleses on the intentional infliction of emotional distress issue since the findings on that question are immaterial to the duty the trial court had to render a judgment in accord with the law.[31] Our conclusion is required in this case since a jury's answer to an immaterial issue "cannot alter the effect of the verdict."[32]

For the reasons explained above, we hold the trial court erred by failing to disregard the jury's findings on the claim of intentional infliction of emotional distress.

Trespass

In their third issue, the Manns argue the evidence is legally and factually insufficient to support the damages the jury awarded the Robleses' on their claim of trespass. The damages represent the sum of two numbers, a $50,000 award for cost

---

[30]*Id.*
[31]*See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995).
[32]*Id.*

of repairs and a $10,000 award to compensate the Robleses for a temporary loss of the use of their entrance to Tract 1.

We have already explained, however, that the trial court reduced the cost of repair damages awarded by the jury from $50,000 to $37,400 before signing a final judgment under the remittitur procedure, which we described more fully above. The Robleses accepted the remittitur the trial court suggested on their claim for cost of repairs. After the Robleses accepted the remittitur, the trial court signed a judgment awarding the Robleses $47,400 on their trespass claim, a figure it arrived at by adding the $37,400 in cost-of repair-damages to the $10,000 the jury awarded to the Robleses for their temporary loss of use.

To address the arguments in issue three, we first turn to the complaints the Manns level at the jury's $10,000 award for loss of use. According to the Manns, the Robleses presented no evidence to the jury to quantify a figure that represents a reasonable sum to compensate them for the nearly two-month period they were locked out of the entrance they use to enter Tract 1.

Under Texas law, when the case involves an injury to real property, "the proper measure of damages is the cost to restore or replace, plus loss of use for the temporary injury, and loss in fair market value for permanent injury."[33] For claims

---

[33]*Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 481 (Tex. 2014).

involving the loss of use of property damaged but not destroyed, the loss is measured by the reasonable cost for renting a replacement during the period the plaintiff is deprived of his property.[34] To prove damages for loss of use, the plaintiff must show (1) the reasonable rental value of a substitute item and (2) the period the plaintiff was deprived of using the damaged item.[35] Of course, since the Robleses were the plaintiffs in the trial, they had the burden of presenting evidence to quantify the reasonable values for the damages the Manns did to their property.[36] But the jury's estimate for the damages for loss of use, $10,000, is a figure that appears to have been plucked from the air, without any guidance from a witness or other evidence about what a reasonable value would be for temporarily losing the ability to access the entrance at the cattleguard to Tract 1.

To support an award of damages to property, the law requires the plaintiff to present "*some* concrete basis for an estimate."[37] There is no concrete basis for the

_____

[34]*See Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 119 (Tex. 1984). We note the measure is not necessarily rigidly applied because the application thereof may vary given circumstances peculiar to the property damaged in the dispute. *Id.*
[35]*Id.*
[36]*Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 71 (Tex. 2016).
[37]*Burbage v. Burbage*, 447 S.W.3d 249, 260 (Tex. 2014); *see also Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 160 (Tex. 2014) (noting the "evidence must support the amount awarded by the jury; it must not be an 'indicator' that supports the estimates offered by the corporate executive").

loss-of-use award under the record before us here. As a result, the $10,000 award for past loss-of-use cannot stand.

In what remains of the arguments the Manns rely on in issue three, they complain the evidence does not support the jury's $50,000 award for cost of repairs. We disagree for two straightforward and independent reasons. First, the trial court, through the judgment, did not award the Robleses the $50,000 for cost of repairs. Instead, the Robleses were awarded $37,400 as compensation for cost of repairs, a figure derived from the motions relevant to the remittitur.

Second, even if liberally construed the Manns brief by assuming they meant to challenge the $37,400 awarded and not the $50,000 award for loss of use, there is evidence in the record showing the $37,400 award is reasonable to repair the damages to the cattleguard and fence at the entrance to Tract 1. Carlos Solorzano testified $37,400 is a reasonable charge for the work required to repair the entrance and cattleguard. There is ample evidence that supports the jury's conclusion the work the Manns did to repair the cattle guard and entrance did not restore those fixtures to the condition they were in before the Manns altered them. And the Manns have not argued that Solorzano's estimate is not competent evidence supporting the verdict. Nor do they argue that Solorzano's opinion about what is reasonable is legally or factually insufficient to support the amount awarded in the judgment for cost of repairs.

Summing it up: We sustain issue three in part, to the extent the Manns argue that no evidence supports the $10,000 the jury awarded to the Robleses on their claim for loss of use. That said, we overrule the remaining arguments the Manns advance in issue three.

Conclusion

The judgment is modified to delete the $40,000 awarded in the judgment to the Robleses for mental anguish on their claims for intentional infliction of emotional distress. The judgment is also modified to delete the $10,000 awarded in damages for loss of use. We remand the case to the trial court with instructions that that court calculate the appropriate prejudgment interest the Robleses are entitled to recover above the $37,400 awarded for cost of repairs, the only award in the judgment that we have affirmed.[38]

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

_____
HOLLIS HORTON
Justice

Submitted on September 1, 2021
Opinion Delivered December 30, 2021
Before Golemon, C.J., Horton and Johnson, JJ.

---

[38]*See* Tex. Fin. Code Ann. §§ 304.102, .104 (prejudgment-interest award is required in cases involving wrongful death, personal injury, or property damage, and it must be calculated as simple interest).