TEXAS-LOUISIANA POWER COMPANY V. MRS. N. E. DANIELS.

No. 6565. Decided February 19, 1936.
Rehearing overruled April 1, 1936.
(91 S. W., 2d Series, 302.)

*James D. Buster,* of Sherman, *Bennett L. Smith,* of Fort Worth, *Leachman & Gardere,* of Dallas, and *Black & Graves,* of Austin, for plaintiff in error.

The deceased were trespassers to whom the power company owed no obligation, except to refrain from willfully injuring them. San Antonio & A. P. Ry. Co. v. Morgan, 92 Texas, 98, 46 S. W., 28; Street Realty Co. v. Forrester, 22 S. W. (2d) 746; Corder v. Houston Lighting & Power Co., 38 S. W. (2d) 606; 45 C. J., 740.

The duty of the defendant power company, whether statutory or by common law, to maintain its wires at a specified distance from the ground is not a duty due to persons unlawfully using the premises. Guinn v. Delaware & Atl. Tel. Co., 72 N. J. L., 276, 62 Atl. 412; St. Louis, S. W. Ry. Co. v. Pope, 98 Texas, 535.

*Randell & Randell, C. B. Randell, Hubert Bookout,* all of Sherman, and *W. A. Keeling,* of Austin, for defendants in error.

Appellant having admittedly failed to comply with its statutory duty in the premises, and having submitted no evidence showing or tending to show that the decedent was either a trespasser or a bare licensee, appellant may not complain of the issue of negligence submitted by the court in that it was thus accorded rights to which it was not entitled by the case made. Humphrey v. Gas. Co., 100 Vt., 414, 139 Atl., 440, 56 A. L. R., 1011; Texas P. & L. Co. v. Armstrong, 37 S. W. (2d) 294; Williams v. Gas & Electric Co., 274 Mo. 8, 202 S. W., 1; 15 Tex. Jur., 800.

MR. JUSTICE CRITZ delivered the opinion of the court.

Some time after eleven o'clock at night on May 13, 1929, Doc Webster, Tom Webster, his brother, and Bowen Daniels, Doc Webster's brother-in-law, were killed about three miles south of Bells, in Grayson County, Texas, by coming in contact with a power line of the Texas-Louisiana Company at a place where it was broken down by a stroke of lightning about six or seven o'clock the previous morning.

Growing out of these tragic occurrences we have before us the two above numbered and entitled suits. The two suits are so related to each other that we dispose of both of them in one opinion.

The first suit above listed was instituted by R. B. Webster, the father of Doc Webster, deceased, on behalf of himself and on behalf of Mrs. R. B. Webster, mother of the deceased; Vera Webster, surviving widow of the deceased; and Stella Mae Webster, posthumous daughter of the deceased.

The second suit above listed was filed by Mrs. N. E. Daniels, surviving mother of Bowen Daniels.

In the first suit R. B. Webster et al. recovered judgment against the Texas-Louisiana Power Company for $23,000.00. This judgment was apportioned among the plaintiffs in the district court in accordance with a verdict of the jury. In the second suit Mrs. N. E. Daniels recovered judgment for $7,500.00.

Both cases were appealed to the Court of Civil Appeals at Dallas, where they were both affirmed in opinions by Justice Looney. Justice Bond dissented. The first case is reported at 59 S. W. (2d) 902, and the second at 61 S. W. (2d) 179.

The case of R. B. Webster et al., beneficiaries of Doc Webster, deceased, was submitted to a jury on special issues. In response to such issues the jury found the Power Company guilty of negligence (a) in allowing its wires to remain low and near the ground at the time and place in question, (b) in failing to have a watchman at the time and place in question to prevent anyone from coming in contact with its low, sagging wires, and (c) by keeping its wires charged with a powerful current of electricity while they were low and sagging near the ground. In the N. E. Daniels Case, supra, the jury in effect found the same facts.

The facts surrounding the deaths of Doc Webster, Tom Webster, and Bowen Daniels were very tragic. All three men were killed within a few minutes of each other by coming in contact with a highly charged electric power line belonging to the Power Company. In some respects, as will later appear, the Power Company offered evidence, which was rejected, that to our minds would have justified a fact finding regarding some of the circumstances of Doc Webster's death very different from the testimony of Vera Webster, who testified as a witness for herself and the other plaintiffs in both cases.

Under the undisputed evidence Doc Webster, Tom Webster, and Bowen Daniels were killed late in the night of May 13, 1929, by coming in contact with the Power Company's power line. This line had been constructed, and was being maintained, on and over the Carter farm by permission of the owner, and by virtue of an easement or right-of-way deed, which granted the Power Company the right to construct and maintain its

power line on, over, and across such farm. Also, this deed granted the right of ingress and egress and certain other rights proper and necessary to carry out and perform the purposes of the grant.

Early in the morning of May 13, 1929, about six or seven o'clock, lightning struck and broke down two of the poles supporting the Power Company's power line on, over, and across the Carter farm. This caused the wires strung thereon to sag to within two or three feet of the ground at the lowest point. The above-described wires remained in the above-described condition from six or seven o'clock in the morning until the happening of the deaths of these three men late the following night. The Power Company's line was strung on poles set in the ground at regular intervals. As we understand the record, there is no contention that the condition of the line before it was struck by lightning was in violation of law.

■ We have already stated, in substance, the finding of the jury. Such findings undoubtedly convicted the Power Company of negligence in the particulars above detailed. The verdict also found that such negligence was the proximate cause of the deaths of the three men named above.

■ We will not attempt to detail the evidence regarding the negligence of the Power Company. It is sufficient to say that we think there is evidence in the record supporting all findings of negligence. The sufficiency of such evidence was for the Court of Civil Appeals to decide.

It appears undisputed that Doc Webster, Vera Webster, his wife, Tom Webster, Doc Webster's brother, and Bowen Daniels, Vera Webster's brother, were returning to their homes in West Texas in an old Ford automobile. They reached the town of Bells, in Grayson County, Texas, on Monday night, May 13, 1929, intending to go on west through the city of Sherman, but because of bad roads detoured south, intending to go through Whitewright. They left Bells in their automobile about eleven o'clock that night, and sometime later on the same night while traveling in the rain and over a muddy road the car stopped. Vera Webster says that the parties thought the car was out of gasoline. It appears, however, that this was a mistake. There was some gasoline in the car. When the car stopped, it was near the corner of the Carter farm. At the time such farm was rented to Mr. Atnip, of Bells, Texas, but a nego by the name of Frog Jackson resided thereon with his wife and cultivated it. Frog Jackson and his wife were present in the residence

on the farm at the time these three men were killed, and at the time the events surrounding their deaths happened.

According to the testimony of Vera Webster, when the car stopped at the Carter farm, it was raining and the ground was muddy. Tom Webster and Bowen Daniels took an empty can out of the car and left to get gasoline. As we understand the record, Vera Webster does not testify as to how they intended to do so. When Tom Webster and Bowen Daniels left, Doc Webster and Vera Webster remained alone in the car. They were sitting side by side on the seat. Doc Webster sat under the steering wheel and Vera Webster, being worn out and wet from the rain, reclined with her head on her husband's lap. In this position she went to sleep. Vera Webster was aroused by hearing the voice of her brother, Bowen Daniels, calling "Doc." About that time she saw a blue flame, heard a frying sound, and again heard Daniel's voice calling "hurry up." She then saw another blue flame, heard another frying sound, and all was still. After this Doc Webster got out of the car and left. In a few minutes Vera Webster again saw a blue flame and again heard a frying sound, when all was again still. Vera Webster did not attempt to go on the Carter farm. The above circumstances were testified to by Vera Webster, and constituted her version of what happened so far as she knew.

It appears from the record that the ground was muddy and the route taken by Tom Webster and Bowen Daniels could be easily ascertained by following their tracks in the muddy ground. According to these tracks, and other facts, Tom Webster and Bowen Daniels first entered a narrow lane on the Carter place. They crossed this lane in a northerly direction and entered the farm through a wire fence. They then traveled along the side of the lane west, and then north, and passed the house where Frog Jackson resided. They then traveled west again and around into a barn on the Carter farm. They drained the gasoline out of a car belonging to Frog Jackson in said barn into the can they had with them. They then came out of the barn, carrying the gasoline in such can, and for some reason, not explained by the record, traveled across the field northeast to the point where they struck the above mentioned low, sagging, and highly charged power line, and were both electrocuted.

It is undisputed that the dead bodies of all three men, Doc Webster, Tom Webster, and Bowen Daniels, were found the next morning—all close to each other—under the above described low, sagging wire.

At this point there is a very material difference between the parties as to some of the facts surrounding the action of Doc Webster on this fatal night. According to the theory of R. B. Webster et al., and according to the theory of Mrs. N. E. Daniels, and according to the testimony of Vera Webster, Doc Webster went to answer the distress calls described, and was killed while attempting to find and rescue Tom Webster and Bowen Daniels. The testimony of Vera Webster bears out this theory. On the other hand, as shown by the dissenting opinion, the Power Company offered the testimony of witnesses, who were the first to view the scene the next morning, to the effect that there were three sets of human tracks leading from the automobile of Doc Webster et al. across the above mentioned lane, through the above mentioned fence, into the above mentioned field, around the edge of such field, around to the barn, into the barn, out of the barn, and across the field to the place where the three dead bodies were found. This would have been very strong circumstantial evidence tending to contradict the testimony of Vera Webster on the question as to whether Doc Webster went as a rescuer, and in answer to distress calls, under the circumstances detailed by Vera Webster, or whether he went with Tom Webster and Bowen Daniels,—all traveling together on a common enterprise.

Article 1436, R. C. S., 1925, reads as follows:

"*Right of way.* Such corporation shall have the right and power to enter upon, condemn and appropriate the land, right of way, easements and property of any person or corporation, and shall have the right to erect its lines over and across any public road, railroad, railroad right of way, interurban railroad, street railroad, canal or stream in this State, any street or alley of any incorporated city or town in this State with the consent and under the direction of the governing body of such city or town. Such lines shall be constructed upon suitable poles in the most approved manner and maintained at a height above the ground of at least twenty-two feet; or pipes may be placed under the ground, as the exigencies of the case may require."

It is our opinion that the last sentence of the above Article applies to all power lines operated or maintained by power companies in this State. In this regard we think that the words "Such lines," with which such sentence begins, refer to power lines in general, and not merely to power lines that cross condemned land, or that cross other places and things expressly named in the Article. As applied to the issues of these cases,

we think the statute in question required the Power Company to maintain its line at least twenty-two feet above the ground.

■ It was shown that the poles which supported this line were struck by lightning and thereby broken. This caused the line to become in the sagging condition existing at the time these men were killed. The condition produced by the lightning was an act of God, for which the Power Company was not primarily responsible. In spite of this, it was the duty of the Power Company to exercise ordinary care to repair the damage and to restore the statutory requirements within a reasonable time after it discovered, or, in the exercise of ordinary care, ought to have discovered such condition.

Also, under such circumstances, it was the duty of the Power Company to exercise ordinary care to prevent such low, sagging wires from injuring persons and property pending the restoration of statutory requirements.

■ We think the finding that the Power Company was guilty of negligence in allowing its wires to remain low and near the ground was a finding of statutory negligence. If that was the only finding of negligence, it would not alter the relative rights of the parties to this litigation. In this respect we think that the general rule is that as regards the liability of the owner or occupant of land for damages arising out of his negligence to persons coming on such land, there is no distinction to be drawn between cases of common law negligence and cases of statutory or per se negligence. In either event, as a general rule, the liability of the owner is the same, and his defenses are the same. Burnett v. Ft. Worth Light & Power Co., 102 Texas, 31, 112 S. W., 1040. We quote the following from Judge Gaines's opinion in the Burnett Case:

"We have found no case, except those of Greenville v. Pitts and Lefevre v. Galveston, which decides the proposition that a trespasser is without remedy in such a case, but in neither of the cases last mentioned was there any other defense, and in neither was the plaintiff held entitled to a recovery. We fail to see how a trespasser acquires any right by reason of the negligence arising from the violation of an ordinance of a city or a statute, rather than from negligence at common law. In Bishop on Written Laws the author sums up the law on the subject discussed as follows: 'One who disobeys the law subjects himself to any proceeding, civil or criminal, which the same law has ordained for the particular case, in the absence of which ordaining, or in the presence of it when not inter-

preted as excluding other methods, he is liable to those steps which the common law has provided for cases of the like class, as to an indictment, or to a civil action, or to both, according to the nature of the offending. The civil action is maintainable when, and only when, the person complaining is of a class entitled to take advantage of the law, is a sufferer from the disobedience, is not himself a partaker in the wrong of which he complains, or is not otherwise precluded by the principles of the common law from his proper standing in court.' Bishop on Written Laws, par. 141. See, also, cases there cited."

A trespasser is defined by Corpus Juris as follows:

"A person is a trespasser where he enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasures, or convenience, or out of curiosity, and without any enticement, allurement, inducement, or express or implied assurance of safety from the owner or person in charge." 45 C. J., 740.

■ We will not attempt to fully define a licensee. Generally speaking, he is a person who goes on the premises of another merely by permission, express or implied, and not by any express or implied invitation. 30 Tex. Jur., 860. Corpus Juris defines a licensee as "A person licensed; one who holds a license." 37 C. J., 161. The same authority says that "A license implies permission or authority, and is more than mere sufferance, but it does not imply an invitation." Id.

It is the general rule, as established by our decisions, that the owner or occupant of real property is under no obligation to make it safe for the benefit of trespassers, intruders, or mere licensees coming upon it without his invitation, express or implied. If the owner or occupant invites the public, or particular members thereof, to come upon his premises, he owes such persons the duty to have same in a reasonably safe condition, and to give warning of concealed or latent perils. Bustillos v. Southwestern Portland Cement Co. (Com. of App.), 211 S. W., 929.

It is our opinion that Tom Webster and Bowen Daniels were pure trespassers on this land in so far as the rights of Mr. Carter, Mr. Atnip, and Frog Jackson were concerned. Also, we will assume for the purposes of this opinion that Doc Webster did not go on this land to answer distress calls as indicated in the testimony of Vera Webster. In this regard we

will accept as true the theory of the Power Company and assume that Doc Webster, Tom Webster, and Bowen Daniels were all engaged in a common enterprise with each other, and occupied the same status with relation to this land at the time they were killed. We will assume that they all traveled together from the time they left their car, and that they were all killed together at or about the same time. This leads us to the assumption that Doc Webster was also a pure trespasser in so far as the rights of the owner, the tenant Atnip, and Frog Jackson were concerned.

■ In spite of the fact that Doc Webster and Bowen Daniels were trespassers as to the owner of this land and his tenants, we are unable to see how that fact can aid or comfort the Power Company. In traveling over this land these men were certainly transgressing on no rights of the Power Company. The Power Company under its easement or right-of-way deed, and under the law, had a right to maintain its power line over and on this land, but it had no authority under such deed, or under the law, to maintain its line at the point above the ground where this wire was at the time these men were killed by it. White's Supplement to Thompson on Commentaries on the Law of Negligence, Sec. 802; Caglione v. Mt. Morris Elec. Light Co., 56 App. Div., 191, 67 N. Y., Supp. 660; Daltry v. Medina Electric Light, Heat & Power Co., 208 Pa., 403, 57 Atl., 833; Davoust v. City of Alameda, 149 Cal., 69, 84 Pac., 760; 5 L. R. A. (N. S.) 536; 45 C. J., p. 786, sec. 191.

The Power Company earnestly contends that under the holding in City of Greenville v. Pitts, 102 Texas, 1, 107 S. W., 50, 14 L. R. A., (N. S.) 979, Doc Webster and Bowen Daniels were trespassers on its premises and against its rights at the time they were killed. We think the opinion in the Pitts Case announces the correct rule of law, but such rule has no application here. In that case Pitts, a peace officer, went upon the roof of the building of another under such circumstances that his status was that of a trespasser or a licensee as regards the rights of the owner or person in charge of the building. While on such building, Pitts came in contact with an electric power wire belonging to the City and was injured. The wire was being maintained by the City, at the place where Pitts came in contact with it, by consent of the owner of the building. The opinion holds that such line was therefore lawfully at the place where Pitts came in contact with it. Under such a state of facts the City was regarded as the owner of the premises at the point or place it lawfully occupied with its line, and Pitts

was denied recovery on the ground that he was either a trespasser or a licensee as regards the City.

In the case at bar, as already demonstrated, the Power Company was not in possession of the land here involved, except for the purposes and with the rights incident to its easement or right-of-way deed. It had no right under such deed, or under the law, to maintain its wire in the low, sagging condition here shown. In this regard it did not lawfully occupy the space where this wire was hanging, with the consent of the owner. It follows that Doc Webster and Bowen Daniels in walking across this land were not trespassing or transgressing on the property or property rights of the Power Company.

■ The Power Company earnestly contends that the trial court erred in each of these cases in the way and manner in which he submitted the issues of contributory negligence as raised by the evidence. It is not necessary to detail these matters, as they are fully shown in the opinions and dissenting opinions in the Court of Civil Appeals. As already shown, there were two theories as to some of the circumstances surrounding the deaths of these three men. According to one theory, the three men, Doc Webster, Tom Webster, and Bowen Daniels, left their stalled car together, went on this farm together, traveled together on a common mission, and while so traveling together were killed. Under the other theory, Tom Webster and Bowen Daniels first went on this land, and Doc Webster only went after Bowen Daniels had called "Doc" and "hurry up," and after the frying sounds already detailed had been heard, and the blue flames already mentioned had been seen. Under the first theory these three men, who were strangers in the community and knew nothing about this power line or its location, simply walked across this plowed field, without a light and without taking any unusual precautions to discover or avoid walking into this power wire, or to discover or avoid walking into any other similar danger. Such a state of facts does not show, or tend to show, that these men, or any one of them, ought to have foreseen the danger that killed them, or any similar danger. Union Stock Yards v. Peeler (Comm. Appls.), 37 S. W. (2d) 126; Texas & Pac. Ry. Co. v. Bigham, 90 Texas, 223, 38 S. W., 162. This must also be the legal conclusion under either theory above as to Tom Webster and Bowen Daniels.

We have carefully examined all of the requested charges in the case involving the death of Doc Webster, and we are of the opinion that none of them request that the issue of contributory negligence be submitted to the jury, based on the

theory that Doc Webster was guilty of negligence in going on the premises because of the fact that he had heard and seen the things just above mentioned.

The judgments of the Court of Civil Appeals and of the District Court are affirmed in both of the above numbered and entitled cases.

Opinion delivered February 19, 1936.

Rehearing overruled April 1, 1936.