DENTON COUNTY ELECTRIC CO-OPERATIVE, INC., Appellant,

v.

Mrs. U. A. BURKHOLDER et al., Appellees.

No. 16296.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 16, 1962.

Rehearing Denied March 9, 1962.

Jackson, Walker, Winstead, Cantwell & Miller, L. P. Bickel and Jack Pew, Jr., Dallas, for appellant.

Coleman & Whitten, and Royce Whitten, Denton, for appellee Mrs. U. A. Burkholder.

Leachman, Gardere, Akin & Porter, J. Carlisle DeHay, Jr., and Edward E. Crowell, Jr., Dallas, for appellee Joslyn Manufacturing & Supply Co.

RENFRO, Justice.

On the 12th day of June, 1960, five cows belonging to plaintiff were electrocuted. The instrument of death was a power line belonging to defendant, Denton County Electric Co-operative, Inc., which came in contact with the cows by reason of a broken power line pole.

Plaintiff filed suit against the defendant, alleging several acts of negligence. The defendant made Joslyn Manufacturing and Supply Company, successor to the supplier of the poles, a party defendant, and alleged that said Company failed to properly inspect the pole in question before it was delivered to the defendant.

The jury found: (1) the five cows belonged to the plaintiff; (2 and 3) the cows were killed on the occasion in question by electrocution from a transmission line of the defendant; (4) the defendant failed to properly inspect the pole in question prior to the incident in question; (5 and 6) such failure was negligence and a proximate cause of the death of the cattle; (7) the pole was rotten prior to the time it fell; (8 and 9) the use by defendant of such rotten power pole was negligence and a proximate cause of the death of said cattle; (10) that the value of the cattle immediately prior to their death was $3,350. In other issues the jury exonerated Joslyn Manufacturing and Supply Company of any negligence; found the incident was not the result of an unavoidable accident; and it was not the result of an act of God.

Appellant's first twenty points of error attack the answers of the jury to issues 4, 5, 6, 8 and 9 as being without any evidence to support them and the answers were so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

It was established that the power pole was rotten, that it broke and fell because of its defective condition; that the breaking of the pole caused the power line to come into contact with the cows and caused their deaths.

The evidence was sharply contradictory as to whether defendant was guilty of negligence.

According to defendant's witnesses the pole was given a hammer test about 2 weeks before the pole broke and the inspector discovered no rottenness or defects; that a hammer test is the most practicable test for discovering rotten poles.

Plaintiff submitted testimony that the pole broke at ground level. There were split places and rough places in the pole that could be seen from the outside. Plaintiff had the pole, both below and above the break, placed under shelter. She saw and heard a hammer test. There was a different sound further up the pole. The wind accompanying the rain on Sunday was just an ordinary wind and no other poles and no trees were blown down. The pole was in substantially the same condition when exhibited to the jury as when it broke.

Defendant's manager testified that the line superintendent represented to him

prior to the accident that he had inspected some of the poles in the area and they were good. Defendant's witnesses admitted there were other tests that could be made to determine the condition of a pole. One was an auger test. Although defendant did not use an auger test on the poles, other companies used such tests. That if an auger hit the right spot it would reveal a fungus condition.

Both the bottom and top parts of the pole were exhibited to the jury. Before the jury a hammer was used to tap various places on the pole and there is evidence that the hammer taps caused different sounds at different places, indicating deterioration inside the pole. The pole is not before us. It was before the jury. The jury saw the outside appearance and had the benefit of the sound effects of hammer tapping and the interpretation of the sounds by witnesses. There was evidence that the outside of the pole sloughed off easily.

During the hammer test, and when questions were asked about visible appearances, the attorneys merely indicated to the witnesses what portion or part of the pole was under discussion. They failed to have the reporter so indicate in the record. The jury, however saw and heard.

 We must, of course, view the evidence in the light most favorable to the findings of the jury. In view of the testimony that there were cracks on the outside of the pole and that witnesses testified during the trial that tapping on the pole on rotten parts of the pole sounded different from taps on other parts of the pole, the jury might well have believed defendant's line inspector did inspect the pole but, if he did, he did not properly test it. The jury was entitled to believe the testimony to the effect that both parts of the pole were in substantially the same condition on the date of the trial as on the date of the accident. The evidence is such that the jury could have believed that the outside appearance of the pole from ground level up was

sufficient to put defendant on notice that the pole was defective, as well as being sufficient for a jury to have believed that proper tapping of the pole would have revealed upon a prompt inspection that the pole was rotten inside.

In Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302, it was held the Power Company "under its easement or right of way deed, and under the law, had the right to maintain its power line over and on this land, but it had no authority under such deed, or under the law, to maintain its line at the point above the ground where this wire was at the time these men were killed by it."

 In the instant case the right of the defendant to have its power line across plaintiff's land is not questioned but such right gave it no authority to maintain its line on a defective pole. That an electric company has actual notice of the dangerous condition may be inferred fom slight circumstances. 21 Tex.Jur.2d, p. 502, § 22. On page 508, § 27 of the same volume it is stated that "The duty of an electric company to maintain its plant in a reasonably safe condition carries with it the obligation of making such inspection of the condition of its appliances, equipment, lines, and facilities as may be practicable and reasonably essential to the accomplishment of that end," and that the inspection is continuous.

 In view of all the evidence and the reasonable inferences which the jury was entitled to draw therefrom, and in view of the fact the jury was the judge of the credibility of the witnesses and the weight to be given their testimony, we hold that there was evidence of probative force to uphold the answers of the jury to the issues of which complaint is made and that such evidence is not so against the great weight and preponderance of the evidence as to be manifestly wrong.

 Appellant contends the submission of issues 7, 8 and 9 was reversible error

because it constituted a double submission of a single theory of recovery. Duplication of special issues is not sufficient of itself as grounds for reversal unless the complaining party can show that duplication influenced the jury to render a verdict different from what it would have rendered except for the duplication. Munden v. Chambless, Tex. Civ.App., 315 S.W.2d 355. This court held in Tripp v. Watson, 235 S.W.2d 677, that undue repetition of issues should not be tolerated, but that repetition is not necessarily reversible error where there is no reason to believe that confusion resulted from the manner of submission. See also Wilkinson v. Chambers, 205 S.W.2d 639. Defendant has failed to show reversible error by reason of the submission of the issues complained of. Rule 434, Texas Rules of Civil Procedure.

In points 22 and 23 the defendant contends the court erred in failing to inquire of the jury the market value of the cattle after their death. The cattle were killed about 4:00 or 5:00 o'clock on Sunday afternoon. Plaintiff did not know of their death until about 9:00 o'clock on Monday morning. The defendant voluntarily had the carcasses removed from plaintiff's premises. The general rule is that if an animal has been killed the owner is entitled to recover its market value at the time and place of injury. 17 Tex.Jur.2d, p. 162, § 90. There is nothing in the record to indicate that an exception to the general rule should be invoked in this case.

Defendant complains of the following jury argument by plaintiff's counsel: "They first want to lay it off on the Joslyn Manufacturing Company, and then they want to lay it off on the Southwestern Laboratories. And I don't mean any disrespect when I say this—and I say it sincerely—they want to lay it off on God. They want you to say that it was an act of God that caused it." The defendant objected to the argument as being prejudicial and inflammatory. The court promptly sustained the objection.

By pleadings, evidence, jury issue and jury argument defendant endeavored to prove that the "incident" was the result of an act of God. While counsel's use of the words "lay it off on God" might have been somewhat offensive to the listeners, it was not such a remark as was calculated to prejudice the jury against the defendant. In any event, the court sustained defendant's objection to the remark and we think that if any harm was done it was obviated by the court's ruling.

Defendant also contends that it was error for plaintiff's counsel to argue to the jury: "You answer these first ten in the affirmative, or nine in the affirmative and then give this good woman the value of her cattle * * *." We have the benefit of the entire argument made by both counsel. In his opening argument plaintiff's attorney discussed issues 1 through 9 and argued for an affirmative answer and argued the evidence which would support affirmative answers. At the time the complained of statement was made it was clear to the jury that counsel was arguing for them to answer the first nine issues in the affirmative and when he said, "give this good woman the value of her cattle", the jury, as persons of ordinary intelligence, surely knew that he meant for them to answer 10, the damage issue, as to the value of the cattle.

Plaintiff's counsel, in discussing the definition of a prudent person as defined in the court's charge, remarked, "realizing that there are cattle, and people, as far as that is concerned, although, fortunately, nobody is involved here, no person— * * *." Defendant objected to the argument and asked that the jury be instructed not to regard it for any purpose. Plaintiff's counsel then stated: "I said no people were involved." The court thereupon sustained defendant's objection and instructed the jury not to regard the argument for any purposes.

In view of the record, none of the arguments separately constituted reversible er-

ror, nor did the cumulative effect of the arguments do so.

Finally, defendant requests the court to require a remittitur.

In plaintiff's petition she alleged the reasonable cash market value of the cows to be $2,950. The maximum she placed on any one cow was $750. In addition she asked for recovery of a $200 feed bill for calves occasioned by the death of the cows, and for $150 which she alleged it would cost her to search for and replace the cattle destroyed. Her prayer was for $3,350.

The only issue submitted to the jury on damages was for the reasonable cash market value of the five cows. No evidence was introduced or issues submitted on the other two items plead.

The generous jury, however, found the value of the cows to be the amount set out in plaintiff's prayer, which amount was $50 more than the total asked for by plaintiff, including the items of $200 and $150 which were not proved or submitted to the jury.

In addition, the maximum reasonable market value placed on the five cows by plaintiff's own witnesses, by coincidence, amounted to $2,950, the amount she had alleged in her petition. Plaintiff herself, although in her petition had not placed a value of more than $750 on any one cow, testified that one cow and her two months' old calf were worth $900. She did not state the value of the cow without the calf. The calf was not killed and no recovery was sought for its value.

■ The court's judgment must be supported by the pleadings and the evidence. Government Employees Credit Union v. Jaquez, Tex.Civ.App., 318 S.W.2d 134; Clonts v. Johnson, 116 Tex. 489, 294 S.W. 844.

■ If there is no reversible error in the record, the objection to a verdict and judgment in excess of the amount plead and proved may be removed by remittitur.

York's Adm'r v. Gregg's Adm'r, 9 Tex. 85; Lewter v. Lindley, Tex.Civ.App., 121 S.W. 178.

Under Rule 440, T.R.C.P., the court of civil appeals has authority to suggest a remittitur.

■ The plaintiff contends that when issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings, citing Rule 67.

Said rule is not applicable here, because at the time issue 10 was submitted the defendant had no way of knowing that the jury was going to return a verdict $400 in excess of the amount which plaintiff had plead and proved.

Since the amount of the jury verdict and judgment was clearly excessive in the amount of $400, a remittitur should be filed by the plaintiff.

The judgment in favor of Joslyn Manufacturing and Supply Company is affirmed.

The judgment in favor of plaintiff will be affirmed conditionally upon the plaintiff's filing within fifteen days a remittitur in the amount of $400 on the judgment. If the remittitur is not filed, the judgment is ordered reversed and the cause remanded.

Affirmed as to Joslyn Manufacturing and Supply Company; affirmed conditionally as to judgment in favor of plaintiff against the defendant.

BOYD, J., not participating.

### SUPPLEMENTAL OPINION

RENFRO, Justice.

Plaintiff having filed in writing the remittitur as suggested in our original opinion, it is ordered that the judgment, as reduced by the remittitur, be affirmed.