Mrs. Thomas Floyd ALLEN, etc., Plaintiff-Appellant,

Aetna Insurance Company, Intervenor-Appellant,

v.

TEXAS AND PACIFIC RAILWAY COMPANY, Defendant-Appellee.

No. 28223.

United States Court of Appeals, Fifth Circuit.

Aug. 11, 1970.

Rehearing Denied Sept. 18, 1970.

Scott Baldwin, Doyle Curry, Marshall, Tex., for Allen.

Jason W. Smith, Brady Coleman, Longview, Tex., for Aetna.

Franklin Jones, Jr., Jones, Jones & Baldwin, Marshall, Tex., for plaintiff-appellant.

Jack W. Flock, Tyler, Tex., for appellee; Mike A. Hatchell, Ramey, Brelsford, Flock, Devereux & Hutchins, Tyler, Tex., of counsel.

Before GEWIN, GOLDBERG and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

Appellants brought suit against the Texas & Pacific Railway Company (here-inafter, the Railroad) for the wrongful death of Thomas Floyd Allen who was electrocuted while erecting a sign on the Railroad's right of way. The district court granted summary judgment for the Railroad. We reverse.

On 9 August 1967, decedent, an employee of Rainbo Sign Company, was a member of a crew erecting a billboard in the vicinity of Terrell, Texas, on the Railroad's right of way. The sign was being located directly beneath high voltage transmission lines maintained by the Railroad. Decedent was killed almost instantaneously when he came into contact with a line carrying 550 volts of electric current. Neither Rainbo Sign Company nor the decedent had express permission to be on the right of way or to erect the road sign thereon.

With jurisdiction grounded in diversity of citizenship,[1] decedent's widow individually and on behalf of their minor child, brought suit in the district court. Aetna Insurance Company intervened seeking recovery of benefits paid under the Texas Workmen's Compensation Act. Decedent's parents intervened to recover contributions lost as a result of his death. Appellants alleged that decedent's death was proximately caused by the Railroad's negligent maintenance of its transmission lines. They specifically alleged that the lines were dangerously low and below the minimum height required by state law.[2] The Railroad moved for summary judgment asserting that, at the time of his fatal injury, the decedent was a trespasser or a mere licensee upon its right of way. As a result, the Railroad contended that it owed him no duty except to refrain from affirmatively injuring him. The district court ultimately granted the motion for summary judgment.

---

1. 28 U.S.C. § 1332(a) (1). Mrs. Thomas Floyd Allen and Shaundra Lee Allen, the original plaintiffs are citizens of Kansas. The Railroad is a Texas corporation and does business in that state.

2. Article 1436 of Vernon's Civil Statutes of Texas, provides that power lines,
* * * shall be constructed upon suit-able poles in the most approved manner and maintained at a height above the ground of at least twenty-two feet.
* * *
This provision applies to all power lines. Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302 (1936); Tri-County Electric Cooperative v. Clair, 217 S.W.2d 681 (Tex.Civ.App.1949).

The *Erie* question to be resolved is whether the district court properly determined that the Railroad owed the decedent no duty of care which could have been breached in the circumstances of the present case. The Railroad relies on a general proposition of Texas tort law that the owner or occupant of realty is under no obligation to make his realty safe for trespassers or mere licensees; *i. e.* persons coming onto the property without his express or implied invitation. These individuals must take the premises as they find them, and the owner or occupant owes them no duty except to refrain from injuring them willfully, wantonly or through gross negligence.[3]

In the present case it seems reasonable to assume that the decedent was a trespasser on the land, and that the above rule, if applicable, would bar any recovery.[4] However, on the authority of Texas-Louisiana Power Co. v. Webster,[5] appellants contend that the general rule does not apply. In *Webster* three men were killed when they came into contact with a fallen power line while venturing uninvited onto a farm in search of aid for their stalled auto. The Texas Supreme Court held that the power company owed these men a duty of ordinary care, in spite of its conclusion that they were "pure trespassers" on the land. The power company maintained its lines across the farm under an easement from the owner, and the court held that its status was not comparable to that of an owner or occupant of the premises. It stated:

> [T]he power company was not in possession of the land here involved, except for the purposes and with the rights incident to its easement or right of way deed. It had no right under such deed, or under the law, to maintain its wire in the low, sagging condition here shown. In this regard it did not lawfully occupy the space where this wire was hanging, with the consent of the owner.[6]

If, in the present case, the Railroad's power lines were on the property pursuant to an easement to maintain power lines over it, there would be little question that *Webster* would control the outcome. The Railroad has admitted that the fatal line was suspended below the level required by state law.[7] But, the

---

3. Johnson v. Macias, 193 F.2d 475 (5th Cir. 1952); Texas Cities Gas Co. v. Dickens, 140 Tex. 433, 168 S.W.2d 208 (1943); Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073 (1941); 40 Tex.Jur.2d Negligence § 64 (1962).

4. Our disposition of the case makes it unnecessary to consider the appellants' argument that decedent was not a trespasser.

5. 91 S.W.2d 302 (Tex.1936).

6. 91 S.W.2d at 307.
   In a post-submission brief the appellee lays great stress on the contention that the deed to the power company was far more restrictive than the deed held by the appellee. We quote pertinent parts of the power company deed involved in the *Webster* case as set forth in the brief of appellee granting:
   > an easement or right-of-way for an electric transmission and distributing line, consisting of variable numbers of wires, necessary or desirable appurtenances (including towers or poles made of wood, metal or other materials, telephone and telegraph wire, props and

guys), at or near the location and along the general course now located and staked out by the said H. Brodhead, his Associates and Assigns, over across and upon the following described lands,

\* \* \* \* \*

Together with the right of ingress and egress over my (our) adjacent lands to or from said right-of-way for the purpose of constructing, reconstructing, inspecting, patroling, hanging new wires on, maintain and removing said line and appurtenances, the right to relocate along the same general direction of said lines; the right to remove from said lands all trees and parts thereof, or other obstructions which endanger or may interfere with the efficiency of said line or its appurtenances; and the right of exercising all other rights hereby granted.

7. See note 2 *supra*. In answer to appellants' interrogatory the Railroad stated: The height of the wires at their lowest point to the ground within an area of 10 feet in all directions from the point where Thomas Allen was killed is 13 feet, 10 inches.

Railroad's rights in the property were derived from a somewhat broader right of way deed granting the company:

> * * * The right-of-way through and over all of our land * * * embracing one hundred feet on each side of the tract of said road and relinquishing the cattleguard, together with the use of the wood, timber and water pertaining to the land so granted and conveyed.[8]

On this basis, the Railroad strongly argues that the situation of the power company in *Webster* is not analogous. There, it contends, the easement granted the company no surface rights, except as might be necessary to sink poles in the ground. According to this argument, the *Webster* plaintiffs could not have been trespassers as to the power company short of climbing its poles or violating its air space.[9] The Railroad contends that, inasmuch as it does have an interest in the surface of the land, it is entitled to benefit from the general "no duty to trespassers" rule. While this narrow reading of *Webster* is possible, the Texas Court of Civil Appeals in Phillips Pipe Line Co. v. Razo,[10] stated:

> It seems to be a well settled rule of law in this State that an easement holder, not being in exclusive possession of the land, owes the duty of ordinary care to others who may come on the property, and this duty extends even to others who would be tres-

passers as to the owner of the fee interest.[11]

In gauging the responsibility of an easement owner to a trespasser by this standard, the critical factor is the nature and extent of the owner's possession.[12] In spite of the broad language of the instrument in question, it conveys a right of way of a designated width over and through the servient estate and hence grants a mere easement to the Railroad.[13] Under the directive of *Razo*, the Railroad owed decedent a duty of ordinary care regardless of his status vis a vis the fee owner. The *Razo* statement appears especially compelling when the rationale behind the "no duty to trespassers" rule is examined. It was explained by the Texas Supreme Court in Texas Cities Gas Co. v. Dickens:[14]

> The rule that there is no duty to keep premises safe for trespassers or licensees is for the protection of the property owner. So long as he creates no nuisance, he is entitled to use his property as he sees fit. He is entitled to assume that his possession will not be disturbed by outsiders. It would be placing an unreasonable burden upon him to require that he keep his premises safe for strangers who come uninvited on his land for purposes of their own.

By contrast the easement owner is entitled only to the use of the property necessary for the enjoyment of his ease-

8. The instrument, contained in the exhibits, was given by J. W. Elder and his wife S. E. Elder and bears the date June 5, 1874. Power transmission lines of the kind here involved were surely not in use when this conveyance was executed.

9. *See* Craig v. Rio Grande Electric Cooperative, 346 S.W.2d 438 (Tex.Civ.App. 1961).

10. 409 S.W.2d 565 (Tex.Civ.App.1966), rev'd on other grounds, 420 S.W.2d 691 (Tex.1967). See 40 Tex.Jur.2d Negligence § 64 (Supp.1969).

11. 409 S.W.2d at 571, citing: Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup. Ct.) ; Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302; Prairie Pipe Line Co. v. Dalton, 243 S.W.

619 (Tex.Civ.App. writ dis'm) ; Denton County Electric Co-Op., Inc. v. Burkholder, 354 S.W.2d 639 (Tex.Civ.App. Writ Ref. N.R.E.).

12. *See* Hernandez v. Heldenfels, 374 S.W. 2d 196, 200 (Tex.1963) ; Jezek v. Texas Power & Light Co., 282 S.W.2d 112, 116 (Tex.Civ.App.1955).

13. Wright v. Cherry, 384 S.W.2d 273 (Tex. Civ.App.1955) ; Gulf Coast Water Co. v. Hamman Exploration Co., 160 S.W.2d 92 (Tex.Civ.App.1942) ; Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737 (1913) ; 21 Tex.Jur.2d Easements § 13 (1961).

14. 140 Tex. 433, 168 S.W.2d 208, 210 (1943).

ment.[15] His rights are generally restricted by the nature of the easement and the terms of the granting instrument. The easement owner's right to use the premises certainly cannot extend to a use which violates the law.[16]

Because it appears that the sole reason the district court granted the motion for summary judgment was its belief that the decedent as a trespasser was owed no duty by the Railroad, the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

15. It is the owner of the servient estate that has full dominion and use of the land insofar as it is not inconsistent with the reasonable enjoyment of the easement. 21 Tex.Jur.2d Easements § 41 (1961).

16. *See* Jezek v. Texas Power & Light Co., 282 S.W.2d 112 (Tex.Civ.App.1955); Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302 (1936).