NUMBER 13-04-128-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

ROBERTO
CHAPA,                                                   Appellant,

 

                                           v.

 

AL
HOGAN BUILDER, INC., ET AL.,                              Appellee.

 

 

 

                  On appeal from the 319th
District Court

                           of Nueces
County, Texas.

 

 

 

                     MEMORANDUM OPINION

 

              Before Justices Rodriguez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








Appellant, Roberto
Chapa, brings this appeal from the trial court's order of February 9, 2004,
granting summary judgment in favor of Al Hogan Builder, Inc.
("Hogan"), and the subsequent dismissal of all causes of action on
February 18, 2004.[1]  We affirm.

I.  Background

Chapa, an experienced
insulator, was working in the attic of a home being built by Hogan, installing
blown insulation.  He stepped on what he
alleged to be an "unsecured floor joist," which gave way, causing
Chapa to fall through the ceiling and onto the floor, injuring his knee and
lower back.  Chapa brought claims for
negligence and gross negligence, alleging that Hogan failed to warn Chapa, its
invitee or licensee, of the dangerous condition on the job site.  Chapa alleged, in the alternative, that the
instrumentality of the accident was in the sole possession of Hogan, and
therefore the accident was the result of unknown negligent activities of Hogan.

II.  Standard of Review








The function of
summary judgment is to eliminate patently unmeritorious claims and defenses,
not to deprive litigants of the right to a jury trial.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 n.5 (Tex. 1979); Swilley v. Hughes, 488 S.W.2d 64,
68 (Tex. 1972); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.BCorpus Christi 2003,
no pet.).  On appeal, the standard of
review for the grant of a motion for summary judgment is determined by whether
the motion was brought on no‑evidence or traditional grounds.  See
Tex. R. Civ. P. 166a(i), (c); Alaniz, 105 S.W.3d at 344; Ortega
v. City Nat'l Bank, 97 S.W.3d 765, 771 (Tex. App.BCorpus Christi 2003,
no pet.) (op. on reh'g).  The difference
in relative burdens between the parties in the two types of summary judgment
motions is significant.  Alaniz,
105 S.W.3d at 344.  Determination of the
nature of the motion for summary judgment under analysis is critical.  Id.

The trial court did
not specify the ground or grounds on which it granted Hogan's motion for
summary judgment.  Accordingly, we will
uphold the summary judgment if any one of the grounds raised by Hogan in its
summary judgment motion has merit.  Bradley
v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999); Alaniz, 105
S.W.3d at 344; Ortega, 97 S.W.3d at 772. 
Hogan did not separately present and brief its no‑evidence and
traditional motions for summary judgment.

A.  No-Evidence Summary Judgment Standards

A no‑evidence
motion for summary judgment asserts that there is no evidence of one or more
essential elements of a claim on which the adverse party will bear the burden
of proof at trial.  Tex. R. Civ. P. 166a(i); Alaniz,
105 S.W.3d at 344; Scripps Tex. Newspapers, L.P. v. Belalcazar, 99
S.W.3d 829, 840 (Tex. App.BCorpus Christi 2003,
pet. denied).  This type of motion must
specifically identify the elements of the claim for which there is alleged to be
no evidence.  Meru v. Huerta, 136
S.W.3d 383, 386 (Tex. App.BCorpus Christi 2004,
no pet.).  Conclusory motions or general
no-evidence challenges to an opponent's case are not appropriate under this
rule.  Id. at 387.  








We apply the same
legal‑sufficiency standard of review to a no‑evidence summary
judgment as we apply to a directed verdict. 
Alaniz, 105 S.W.3d at 344; Belalcazar, 99 S.W.3d at
840.  "Like a directed verdict,
then, the task of the appellate court is to determine whether the plaintiff has
produced any evidence of probative force to raise fact issues on the material
questions presented."  Belalcazar,
99 S.W.3d at 840.  To raise a genuine
issue of material fact, all that is required of the non‑movant in
responding to a no‑evidence motion for summary judgment is to produce a
scintilla of probative evidence.  Alaniz,
105 S.W.3d at 344; Ortega, 97 S.W.3d at 772.  "Less than a scintilla of evidence
exists when the evidence is 'so weak as to do no more than create a mere
surmise or suspicion' of a fact."  Alaniz,
105 S.W.3d at 344; see Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63
(Tex. 1983).  Conversely, more than a
scintilla exists when the evidence "rises to a level that would enable reasonable
and fair‑minded people to differ in their conclusions."  Alaniz, 105 S.W.3d at 344; Ortega,
97 S.W.3d at 772 (quoting Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25
(Tex. 1994)).  The movant has no burden
to attach any evidence to a no‑evidence motion for summary judgment.  See
Tex. R. Civ. P. 166a(i); Ortega, 97 S.W.3d at 772.  The non‑movant bears the entire burden
of producing evidence to defeat a no‑evidence motion for summary
judgment.  Alaniz, 105 S.W.3d at
344.

B.  Traditional Summary‑Judgment Standards








We review de novo a
trial court's grant or denial of a traditional motion for summary
judgment.  Id. at 345; Ortega,
97 S.W.3d at 771.  The movant bears the
burden of showing both that no genuine issue of material fact exists, and that
it is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Alaniz,
105 S.W.3d at 345.  In deciding whether
there is a genuine issue of material fact, we take evidence favorable to the
non‑movant as true.  Alaniz,
105 S.W.3d at 345.  We make all
reasonable inferences and resolve all doubts in favor of the non‑movant.  Id. 
Summary judgment for a defendant is proper if the defendant disproves at
least one element of each of the plaintiff's claims or affirmatively
establishes each element of an affirmative defense to each claim.  Id. 
A non‑movant has the burden to respond to a traditional summary
judgment motion if the movant conclusively (1) establishes each element of its
cause of action or defense, or (2) negates at least one element of the non‑movant's
cause of action or defense.  Alaniz,
105 S.W.3d at 345; Ortega, 97 S.W.3d at 771. 

III.  Analysis

A.  No-Evidence Motion for Summary Judgment

Chapa's petition
brings claims for negligence and/or gross negligence.  Texas law requires proof of three familiar
elements to sustain a cause of action for negligence:  (1) a legal duty owed by one party to
another, (2) a breach of that duty, and (3) damages proximately caused by the
breach.  D. Houston, Inc. v. Love,
92 S.W.3d 450, 454 (Tex. 2002).  The non‑existence
of a duty ends the inquiry into whether negligence liability may be
imposed.  Van Horn v. Chambers,
970 S.W.2d 542, 544 (Tex. 1998).  








In issue is the duty
owed by a contractor to the employee of a subcontractor.  Hogan alleged in its motion that Chapa failed
to tender proof on the element of duty, breach of any duty, or that any breach
was a proximate cause of Chapa's damages. 
Hogan also alleged the absence of any evidence that Hogan acted
unreasonably.  

The motion as written
addresses each of the elements of negligence broadly alleging that there is no
evidence as to any of the elements of negligence.  The motion makes no distinction between the
various types of negligence alleged by Chapa, including allegations that appear
to include a premises defect,[2]
and res ipsa loquitur.[3]  A no‑evidence motion for summary
judgment must state the elements of the claim as to which there is no
evidence.  Tex. R. Civ. P. 166a(i); Meru, 136 S.W.3d at 386.  This requirement is strictly construed.  Id. (citing Michael v. Dyke, 41
S.W.3d 746, 751 n.3 (Tex. App.BCorpus Christi 2001,
no pet.)).  Rule 166a(i) does not
authorize conclusory motions or general no‑evidence challenges to an
opponent's case.  Tex. R. Civ. P. 166a cmt.; Oasis Oil Corp. v. Koch Ref.
Co., L.P., 60 S.W.3d 248, 252 (Tex. App.BCorpus Christi 2001, pet. denied).








 We agree that Hogan's no-evidence motion for
summary judgment is conclusory and inadequate as a no-evidence summary judgment
motion.  It fails to enumerate with
adequate specificity the elements of the claim(s), other than general
negligence, for which Hogan contends there is no evidence.  We next review de novo Hogan's motion for
traditional summary judgment.  

B.  Traditional Summary Judgment

Hogan's motion for
summary judgment alleges as its first ground that it owed no duty and breached
no duty to Chapa.  Evidence tendered
includes the deposition testimony of Chapa and of Paul Steger, a registered professional
engineer and the engineer of record for the structure.  Hogan asserts that Chapa, according to his
own testimony, stepped on a cross-board rather than a ceiling joist.  The cross-board, clearly positioned between
joists, was meant only to support a light fixture or ceiling fan.  Hogan also asserts that no building code
requires that ceiling joists be cross-braced, and that Chapa, as an experienced
insulator familiar with attics, should have known that cross-boards are not
meant to be weight-bearing.  Hogan argues
that Chapa was "therefore negligent as a matter of law, that Movant was
not negligent, and that Plaintiff's negligence was more than 51% responsible
for this accident."








Hogan tendered
evidence to establish Chapa's experience and that he knew of the danger of
stepping on boards other than joists.[4]  We cannot agree that this evidence is limited
solely to the question of causation; it also directly impacts the question of
duty and breach of duty.  As a matter of
law, the duty owed in a premises liability claim depends upon the status of the
injured person.  Mellon Mortg. Co. v.
Holder, 5 S.W.3d 654, 660 (Tex. 1999) (Abbott, J., concurring) (citing Carlisle
v. J. Weingarten, Inc., 152 S.w.2d 1073, 1074 (Tex. 1941).

Generally speaking, a
licensee is a person who goes onto the premises of another merely by
permission, express or implied, and not by any express or implied
invitation.  Olivier v. Snowden,
426 S.W.2d 545, 549 (Tex.1968); Texas-Louisiana Power Co. v. Webster, 91
S.W.2d 302, 306 (Tex. 1936). 
"Because a licensee enters for his or her own purposes, he has no
right to demand that the land be made safe for his reception and he must, in
general . . . look out for himself." 
County of Cameron v. Brown, 80 S.W.3d 549, 557 (Tex. 2002).  Therefore, the duty owed a licensee
requires that a landowner (or person in control of the premises) not injure a
licensee by willful, wanton or grossly negligent conduct, and that he use
ordinary care either to warn a licensee of, or to make reasonably safe, a
dangerous condition of which the owner is aware and the licensee is not.  State Dep't of Highways and Pub. Transp.
v. Payne, 839 S.W.2d 235, 237 (Tex. 1992). 
A licensee must prove that he had no knowledge of a dangerous condition
(if such exists); if a licensee has the same knowledge as the licensor, then no
duty to the licensee exists.  See
Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003).  








In order to create the
relation of invitor and invitee, the invitee must "go upon and appropriate
the premises or the facilities of the invitor by and through which some benefit
is received by the latter.  In other
words, the mission of the invitee should be for the mutual benefit of both
parties."  Snowden, 426
S.W.2d at 549.  An occupier of premises
has a duty to an invitee to use ordinary care to keep the premises in a
reasonably safe condition, or to warn of any hazard.  Payne, 838 S.W.2d at 243-44 (citing J.
Weingarten, Inc., v. Razey, 426 S.W.2d 538, 539 (Tex. 1968)).  The premises owner, or contractor in
possession or control of the premises, must inspect the premises and warn an
independent contractor/invitee of dangerous conditions that are not open and
obvious and that the owner knows or should have known exist.  Coastal Marine Serv. v. Lawrence, 988
S.W.2d 223, 225 (Tex. 1999) (citing Clayton W. Williams, Jr., Inc., v. Olivo,
952 S.W.2d 523, 527-28 (Tex.  1997)
(superceded by statute)).  Premises
defects of this type are ones "in which the danger did not arise through
the work activity of the subcontractor/invitee."  Id. (citing Shell Chem. Co. v. Lamb,
493 S.W.2d 742, 746-47 (Tex. 1973)). 
Only concealed hazardsBdangerous in their own
right and independent of action by anotherBthat are in existence
when the independent contractor enters the premises fall into this subcategory
of premises defects.  For example, an
open shaft with inadequate warnings, in existence when contractors entered a property,
has been held to be such a defect.  Id.
(citing Smith v. Henger, 226 S.W.2d 425, 431-33 (Tex. 1950)). 








Chapa's deposition
testimony establishes he was the employee of a subcontractor, on the job to
install insulation as part of the process of constructing a home. This is
undisputed.  We conclude Chapa was on the
property as an invitee.[5]  The issue therefore becomes not one of
whether any duty was owed to Chapa, but whether there was any breach of such a
duty.  If indeed Chapa fell through the
ceiling because a ceiling joist was not properly fastened down, this would
constitute a concealed hazard, independent of action by another.  If, on the other hand, this was a cross-board
which was not required to be secured in place because it was never meant to be
weight-bearing but was designed to serve other purposes, and Chapa had
knowledge of the difference between joists and cross-boards, then there is no
concealed hazard or premises defect. 

Chapa acknowledges
that he knew that he had to step only on the joists in order to be safe when
walking in the attic.  He discussed that
he stepped on a joist which gave way because "it was not nailed up there like
it was supposed to be."  When it gave
way, he fell through the ceiling and was injured.  However, Chapa then clarified in his
deposition that the board he stepped on was not a "long joist:"








A:  Byou know, IBI didn't understand,
you know, that one, what you wasBthe long joist, I know
they'reBthey're there, you
know.  The one I'mBI was talking about,
the oneBit wasBit was going across
the two joists, like support, you know. 
That's what I wasBthat's what I'm
talking about.

 

Q: Okay.  Let's clear that up a little bit . . . you've
got the framing diagram and it's talking about 2-by-6 joists.

 

A:  Yeah. Uh-huh. 
And theyBthey had one across
that one.  That's the one that gave when
I was walking back.

 

Q:
Okay.  So there was something between the
joists?

 

A: Uh-huh.
Yeah.

 

Q: All right. Was that
a 2-by-6?

 

A: 2-by-6 there B . . . 

 

Q: Okay.  Is it common to see things between the
joists?

 

A: They do haveByeah, to support. I
don't know what.  Maybe to hang lights
and ceiling fans or whatever. . . .

 

Q: Okay.  So let me make sure I've got it clear.  What you're saying is that you didn'tBit wasn't a joist that
gave way, then?

 

A:  Not the long ones, no. No, notBI'm talking about it
was in between. . . . In between the joists, yeah.

 

Counsel then discussed
with Chapa whether it was a 2-by-6 or a 2-by-4 board which gave way, and that
2-by-6 boards would be flush with all the other ceiling joists.  Chapa agreed that a 2-by-4 board should be
sitting two inches lower than the joists, but could not remember whether this
board was flush with or lower than the ceiling joists.  Chapa stated that he kicked the board first
to be sure it was stable, that it did not move and he therefore thought it was
nailed down, and that he then stepped on it and it broke.  Chapa also stated that, after he fell, the
board was still attached to the piece of sheetrock that was swinging from the
ceiling. 








Based on this and
other portions of Chapa's testimony, Hogan asserts that Chapa did not step on a
ceiling joist, and that he was experienced in his profession, such that he was
aware of the dangers of stepping on other types of boards in an attic.   








Evidence tendered by
Hogan also included the deposition testimony of Paul Steger, identified as the
structural engineer for the premises in issue.[6]  Steger designed the foundation, and was
responsible for the windstorm inspection and ensuring compliance with the
windstorm code.  He hires other
inspectors to perform the actual inspection. 
Steger testified that the structure was built in accordance with the
windstorm codes, which requires the secure fastening of all ceiling joists, and
that he was not aware of any code requiring ceiling joists to be
cross-braced.  This particular structure
had passed the windstorm inspection prior to the accident involving Chapa.[7]  Steger testified that if there were a board
between two joists, it would not have been placed there as a part of any code
requirement, and it would not have been a structural element.  Any such cross board could have been
installed by a plumber to support an evaporator, an electrician to support a
light fixture or ceiling fan, or by a sheetrocker to provide an edge.  It would not have been a joist or structural
member.  From this testimony, Hogan
argues that it had no duty to secure a cross-board in the same manner as it
would secure a ceiling joist, and that it therefore had no duty to warn Chapa
of a non-existent concealed hazard or special dangerous condition on the
premises of which Hogan had knowledge but Chapa did not. 

The summary judgment
record also includes evidence tendered by Chapa, including the deposition
testimony of Adrian Garcia, a co-worker on the job on that date.  Garcia testified that after the accident,
when he went to assist Chapa, he saw a fallen 2-by-4 board, not a 2-by-6 board,
a little less than two feet long.  He
thought it was on the floor below the hole in the ceiling.  He also testified that his employer
instructed them not to step on sheetrock, and to step on joists; he did not
recall any instructions regarding stepping on cross-boards.  Garcia's testimony corroborates that the
board in issue was a cross-board, not a ceiling joist. 

IV.  Conclusion

Despite Chapa's
continued urging that evidence does not confirm that he stepped on a
cross-board or 2-by-4 rather than on a ceiling joist or 2-by-6, we conclude
from the testimony of Chapa, Garcia and Steger that the board Chapa stepped on
was not a ceiling joist, and that no fact issue exists on this point.








It is the movant's
burden to show that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law. 
Nixon v. Mr. Property Management, 690 S.W.2d 546, 549 (Tex.
1985).[8]  Hogan was required to show the absence of any
fact issue with respect to at least one critical element of each of a
plaintiff's claims, such that plaintiff cannot recover as a matter of law.  Id. 

We uphold summary
judgment if any of the grounds raised by Hogan in its summary‑judgment
motions has merit.  Bradley, 990
S.W.2d at 247.  The duty owed by Hogan
was to keep the premises in a reasonably safe condition, or to warn of any
concealed hazard.  Payne, 838
S.W.2d at 243-44.  We conclude there is
less than a scintilla of evidence[9]
that (1) a condition existed on the premises that was a concealed hazard or
posed an unreasonable risk of harm to Chapa, or (2) that Hogan failed to
exercise reasonable care to reduce or eliminate the risk, or failed to warn,
such that Hogan breached any duty to Chapa.  See Gonzalez, 968 S.W.2d at 936.  Summary judgment for Hogan is therefore
proper because Hogan has disproved at least one element of each of the
plaintiff's claims.[10]  Alaniz, 105 S.W.3d at 345. 

We conclude the trial
court did not err in granting summary judgment. 
We overrule Chapa's issue on appeal and affirm the judgment of the trial
court.  

ERRLINDA CASTILLO

Justice

 

Memorandum
Opinion delivered and filed

this
the 11th day of August, 2005.                                       











[1]
Hogan filed a third party petition for indemnity against Williams Insulation
f/k/a Insul Pro, LLC, a subcontractor of Hogan. 
Based on the trial court's ruling in favor of summary judgment, the
third party petition became moot and was subsequently dismissed.  This dismissal disposed of all remaining
claims in the suit.  





[2] In a
premises claim, a plaintiff must prove (1) actual or constructive knowledge of
some condition on the premises by the owner/operator, (2) that the condition
posed an unreasonable risk of harm, (3) that the owner/operator did not
exercise reasonable care to reduce or eliminate the risk, and (4) that the
owner/operator's failure to use such care proximately caused the plaintiff's
injuries.  Wal-Mart Stores, Inc. v.
Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). 
A condition poses an unreasonable risk of harm for premises‑defect
purposes when there is a "sufficient probability of a harmful event
occurring [such] that a reasonably prudent person would have foreseen it or
some similar event as likely to happen." 
County of Cameron v. Brown, 80 S.W.3d 549, 557 (Tex. 2002). 





[3] To be entitled to a res ipsa
judgment, the plaintiff must show both (1) that the character of the injury is
such that it could not have occurred in the absence of the defendant's
negligence, and (2) that the instrumentality causing the injury was under the
exclusive management and control of the defendant.  Haddock v. Arnspiger, 793 S.W.2d 948, 950
(Tex. 1990); Lambert v. Gearhart-Owen Indus., Inc., 626 S.W.2d 845, 847
(Tex. App.BCorpus Christi 1981, no writ). 





[4]  Nothing in the traditional motion for summary
judgment is directed to the issue of control over the workplace. 





[5] This
is not a case that turns on whether Hogan contractually retained or actually
exercised a right of supervision such that Chapa's employer was not entirely
free to do the work in its own way, or one in which safety regulations
promulgated by a premises owner/general contractor allegedly increased the risk
or severity of injury to an independent contractor's workers.  See Koch Ref. Co. v. Chapa, 11 S.W.3d
153, 155 (Tex. 1999) (per curiam).  Nor
is this a case in which the negligent injury was caused by a co-employee of
Chapa, such that the question becomes whether Chapa's employer, or the general
contractor Hogan, had control over the work site.  See Dow Chem. Co. v. Bright, 89 S.W.3d
602, 605-06 (Tex. 2002).  We have also
noted Chapa's reference to Redinger v. Living, Inc., 689 S.W.2d 415
(Tex. 1985) for the proposition that Chapa was an invitee rather than a
licensee.  However, Redinger
clearly states that it was not a premises liability case, but rather involved
an injury arising from an activity on the premises. Id. at 417.  Further, although Chapa, in his response to
the motion for summary judgment, addresses Hogan's alleged negligent control,
safety instruction, supervision and training, none of Chapa's pleadings are
directed to such claims.  Chapa's
appellate brief begins with the statement that "[t]his is a simple
premises liability action."





[6] The
deposition testimony clarifies that as of the date of his deposition, Paul
Steger had not been retained or asked to testify as an expert by any party in
the suit.  





[7]
Steger stated that the windstorm code is the most stringent building code.  





[8] We
reject Hogan's contention that Chapa bears the burden to present a fact issue.
It is Hogan's burden to establish the absence of any fact issue, see Nixon
v. Mr. Property Management, 690 S.W.2d 546, 549 (Tex. 1985), and all
reasonable inferences and doubts must be resolved in favor of the non‑movant,
Chapa.  See Alaniz v. Hoyt, 105
S.W.3d 330, 344 (Tex. App.BCorpus Christi 2003, no
pet.). 





[9]
"Less than a scintilla of evidence exists when the evidence is 'so weak as
to do no more than create a mere surmise or suspicion' of a fact."  Alaniz,105 S.W.3d at 344; see
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).  





[10]  Summary judgment is also appropriate on a
claim of res ipsa loquitur, if such is even alleged, based on the clear
evidence that the incident could have occurred, in whole or in part, as a result of Chapa's own
negligence (and therefore in the absence of Hogan's negligence).  See Haddock v. Arnspiger, 793
S.W.2d 948, 950 (Tex. 1990); Lambert v. Gearhart-Owen Indus., Inc., 626
S.W.2d 845, 847 (Tex. App.BCorpus Christi 1981, no writ).